**Jonathan Wallace, Esq.**
**PO #728**
**Amagansett, New York 11930**
**917-359-6234**
**jonathan.wallace80@gmail.com**

February 13, 2026

Hon. Cathy Seibel
United States District Judge
Southern District of New York

Re: *Abdulhaqq v. Sarah Lawrence*
*7:25-cv-06442*

Dear Judge Seibel:

I am counsel to plaintiffs and write in response to Defendant House Committee's pre-motion letter.

**This court has subject matter jurisdiction,** *United States v Am. Tel. & Tel. Co.,* 551 F2d 384, 389 (1976) (Challenge to Congressional third party subpoena[1] to AT&T; "[W]e find subject matter jurisdiction under 28 U.S.C. § 1331"); *cf. Hentoff v Ichord,* 318 F Supp 1175, 1181 (1970) ("Thus the issues here presented necessitate consideration of the legislative purpose underlying the Report, if any be shown"). Cases cited by Defendant are not to the contrary, as they acknowledge that subject matter jurisdiction does exist if the complaint plausibly asserts that the Congressional action lacks a valid legislative purpose, for example, *Eastland v United States Servicemen's Fund,* 421 US 491, 505 (1975) ("The particular investigation at issue here is related to and in furtherance of a legitimate task of Congress"); *WATKINS v UNITED STATES,* 354 US 178, 198 (1957) ("[S[uch an investigation into individual affairs is invalid if unrelated to any legislative purpose"). Defendant asks this Court to find, in order to reject subject matter jurisdiction, that it is acting pursuant to a valid legislative purpose. In considering this question, this Court should be mindful, of course, whether it is being asked to resolve a disputed fact issue against Plaintiffs (which would be improper under the *Iqbal/Twombly* standards for rulings on motions to dismiss) or whether it can confidently rule *as a matter of law* that the Complaint inadequately pleads an invalid legislative purpose.

The Complaint states that the Defendant lacks jurisdiction to inquire into Plaintiffs' First Amendment-protected criticism of Israel and support for the Palestinian people. That the Defendant conflates virtually all criticism of Israel with antisemitism is not a matter of interpretation, but of clear policy, based on its official pronouncements and actions. The Committee's March 27, 2025 letter to Sarah Lawrence College, https://edworkforce.house.gov/uploadedfiles/ltr_sarah_lawrence_coll_3.27.2025.pdf, states at footnote 13: "The term antisemitic incidents should be understood to include any incidents involving the

---

[1] As a threshold matter, the fact that Defendant merely directed Sarah Lawrence to provide information voluntarily, and has not yet issued a subpoena, does not in any way distinguish this case from cited ones involving subpoenas. Government officials may be sued under the First Amendment for mere "jawboning" activities which lack legal coercion, *NRA of Am. v Vullo*, 602 US 175, 191 (2024). Contacts from government entities implying criticism of universities, or even merely attention to them, are inherently coercive, *Menaker v Hofstra Univ.,* 935 F3d 20, 34 (2d Cir 2019) ("Dear Colleague" letter from Department of Education).

*1*

targeting of Jews, Judaism, Israel, Israelis, Zionism, and/or Zionists, or incidents otherwise identified as antisemitic."

Federal courts around the nation have rejected the assertion that anti-Zionism is antisemitism, *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800); *Landau v. Corp. of Haverford Coll.,* No. 24-2044, 2025 U.S. Dist. LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025)  *Canel v Art Inst. of Chicago,* 2025 US Dist LEXIS 30309, at *24-25 (ND Ill Feb. 20, 2025, No. 23 CV 17064);  *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC);  *Newman v. Point Park Univ.,* No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) .

The cases on legislative purpose are all in accord that  "[T]here is no congressional power to expose for the sake of exposure", *WATKINS v UNITED STATES,  supra at* 200 (1957); *Hentoff v Ichord,  supra at* 1182 (D.D.C. 1970) ("The Court notes the increasing tendency of the legislative branch to investigate for exposure's sake").   This Court can in deciding the motion take judicial notice of public records of the Defendant which indicate its interest in naming and shaming individual students and faculty, and in fact obtaining punitive action against them as individuals,  for example Congressperson Virginia Foxx's[2] X post on September 12, 2025:  "Khymani James...was not expelled. Nothing was done. @Columbia you have failed again, again, and again." https://x.com/virginiafoxx/status/1966508008818786572 [3]

Also pertinent on the issue of subject matter jurisdiction is the limited relief the Plaintiffs are requesting against the Committee, simply that it and its members refrain from dissemination outside the halls of Congress of their confidential information, *Gravel v United States,* 408 US 606, 622 (1972) ("Senator Gravel's alleged arrangement with Beacon Press to publish the Pentagon Papers was not protected speech or debate within the meaning of Art. I, § 6, cl. 1, of the Constitution"); *Doe v McMillan,* 412 US 306, 316-317 (1973) ("[W]e cannot accept the proposition that in order to perform its legislative function Congress not only must at times consider and use actionable material but also must be free to disseminate  it to the public at large, no matter how injurious to private reputation that material might be"); *Hentoff v. Ichord*, *supra* (enjoining publication and public distribution of "blacklist" of left-leaning university speakers).

**Plaintiffs have standing.** In *Republican Natl. Comm. v Pelosi,* 602 F Supp 3d 1, 22 (DDC 2022), v*acated on other grounds*, 2022 U.S. App. LEXIS 26068 (D.C. Cir. 2022)[4], the Court began by noting that the subject matter jurisdiction and standing issues are not really separate: "Whether the Court may exercise subject matter jurisdiction ...turns on whether the RNC has standing". It held that the Plaintiff had standing to challenge the issuance of a Congressional subpoena to a third party provider, Salesforce, for copies of its communications.[5]

---

2   Foxx is the former chairperson of Defendant, and remains an active member.

3   Given the limitations on space, counsel will merely flag for this Court that there are numerous other instances of the disclosure of names of, and confidential information regarding, students and faculty in Committee transcripts, reports, and the social media posts of members, which will be brought to the Court's attention on the motion.

4   Though vacated as moot when the subpoena was withdrawn, the case continues to be cited for its reasoning, for example in *Walker v NY State Dept. of Health,* 788 F Supp 3d 427, 482 (EDNY 2025).

5   The Court also held that the RNC had standing to continue its lawsuit against Salesforce even after Congress was dismissed from the case, a proposition strongly suggested by *ATT, supra,* and cases following it. Plaintiffs maintain that

To the extent that Defendant argues, apart from the subject matter issue,  that Plaintiffs lack Article III standing to challenge an information request made to a third party, it is well settled that anyone can challenge a subpoena directed to someone else seeking documents as to which they assert a "personal right or privilege",  *Estate of Ungar v Palestinian Auth.,* 332 F App'x 643, 645 (2d Cir 2009). Plaintiffs are asserting a personal right or privilege of privacy and of First Amendment rights of expression and association in their confidential disciplinary records[6]. Also, given that this is a First Amendment claim,  Defendant should not be heard to argue that harm is speculative, as"[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" *Elrod v Burns,* 427 US 347, 373 (1976).

**The case is neither unripe nor moot.**  Counsel states at p. 2 of his letter: "[B]ecause SLC redacted student names and their PII from the records produced consistent with FERPA[7], the Committee never received FERPA-protected information, or confidential information referring or relating to the student-Plaintiffs, to begin with". This is inappropriate hearsay testimony by counsel, *HB v Monroe Woodbury Cent. Sch. Dist.,* 2012 US Dist LEXIS 141252, at *15 [SDNY Sep. 27, 2012, No. 11-CV-5881 (CS)]) ("[I]t is generally improper to consider factual averments....contained in an attorney affidavit on a 12(b)(6) motion"),  and additionally asks this Court to resolve a disputed fact issue  in the government's favor, which it cannot, *Dombrowski v Eastland,* 387 US 82, 84 (1967) ("There is controverted evidence in the record... which affords more than merely colorable substance to petitioners' assertions... [W]e believe that, as against an employee of the committee, this showing is sufficient to entitle petitioners to go to trial"). The government is asking this Court to accept its attorney's word, as a basis for dismissal, that no student names were disclosed and that FERPA was complied with. Given the Committee's history of disclosing confidential student and faculty information (exposure for the state of exposure) a finding that the case is moot or that it is unripe would both rely on Counsel's empty vouching for his client's good behavior, in the past and in the future (over which he has no control). In any event, "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways", *United States v Concentrated Phosphate Export Ass'n,* 393 US 199, 203 (1968).  In any event, "The presumption of regularity that has been previously extended to [the federal government]  that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds. When [the government], in this case, conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary", *United States v Oregon,* 2026 US Dist LEXIS 25259, at *34 (D Or Feb. 5, 2026, No. 6:25-cv-01666-MTK)

The motion to dismiss should be denied.

---

dismissal of this action as against the House Committee does not necessitate dismissal against Sarah Lawrence College. The assertion that Sarah Lawrence must be a "state actor" in its own right would all but eliminate this rule. However, the RNC court assumed without deciding "Salesforce may be treated as a 'state actor' in this context", RNC, supra at 24.

6   The fact these records are protected by FERPA, while not creating a private right of action, supports standing by confirming that the students have a right or interest in them, *Fay v S. Colonie Cent. Sch. Dist*., 802 F2d 21, 33 (2d Cir 1986)  ("FERPA creates an interest that may be vindicated in a section 1983 action").

7   This Court may note that the March 27, 2025 letter states at page 4 that "When producing documents, do not alter them in any way, including but not limited to the application of redactions". On March 5, 2024, then Committee chair Virginia Foxx issued an official press release, "Foxx Responds to Harvard's Malfeasance", https://edworkforce.house.gov/news/documentsingle.aspx?DocumentID=410218 stating that "Heavy redactions...made several documents useless".

Sincerely,

/s/ Jonathan Wallace