# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NURAH ABDULHAQQ, *et al*.,

    *Plaintiffs*,

  v.

SARAH LAWRENCE COLLEGE, *et al.,*

    *Defendants*.

Case No. 7:25-cv-06442-CS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS</u>

MATTHEW B. BERRY
 *General Counsel*
TODD B. TATELMAN
 *Deputy General Counsel*
ANDY T. WANG
 *Associate General Counsel*
KENNETH C. DAINES
 *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

April 20, 2026

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 6

    I.    The Court Lacks Subject Matter Jurisdiction Over Count I ............................................. 6

        A.   The Speech or Debate Clause Bars Plaintiffs' Suit and Requested Relief ................... 6

            1.   The Speech or Debate Clause ................................................................................. 6

            2.   Information-Gathering and the Use of That Information Are Legislative Acts ...... 7

            3.   The Speech or Debate Clause Requires Dismissal of Count I ................................ 10

            4.   Plaintiffs Cannot Overcome the Clause ................................................................. 11

        B.   Plaintiffs Lack Standing ............................................................................................. 15

        C.   Plaintiffs' Suit Is Not Ripe and/or Is Moot ............................................................... 17

        D.   Because Congressional Defendants Are Necessary Parties Under Rule 19, Count I Must Be Dismissed in Its Entirety .......................................................................... 18

            1.   Congressional Defendants Are Required Parties ................................................... 19

            2.   Congressional Defendants Are Immune From Suit ............................................... 19

            3.   The Rule 19(b) Factors Favor Congressional Defendants ..................................... 21

        E.   Sovereign Immunity Bars Plaintiffs' Claims for Damages ....................................... 22

    II.   Count I Fails To State a Claim Upon Which Relief Can Be Granted .............................. 23

        A.   Plaintiffs Do Not Plausibly Allege Coercion ............................................................ 24

        B.   SLC Is Not a State Actor ........................................................................................... 25

CONCLUSION ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................23

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
   518 F. Supp. 3d 505 (D.D.C. 2021), *aff'd*,
   23 F.4th 1028 (D.C. Cir. 2022)...........................................................................................8, 10

*Barenblatt v. United States*,
   360 U.S. 109 (1959)....................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................23

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)..................................................................................................................26

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998)....................................................................................................................12

*Bragg v. Jordan*,
   669 F. Supp. 3d 257 (S.D.N.Y. 2023), *appeal dismissed sub nom.*
   *Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023)..................13, 14

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288 (2001)..............................................................................................................25, 26

*Brown v. City of New York*,
   No. 09-cv-2337, 2010 WL 4077925 (S.D.N.Y. Oct. 13, 2010)................................................23

*Brown & Williamson Tobacco Corp. v. Williams*,
   62 F.3d 408 (D.C. Cir. 1995).....................................................................................................9

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022)..............................................................................................27

*Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*,
   575 F. Supp. 3d 53 (D.D.C. 2021).......................................................................................13, 14

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*,
   102 F.3d 677 (2d Cir. 1996)...............................................................................................18, 19

*Cooper v. USPS,*
    577 F.3d 479 (2d Cir. 2009)...............................................................................................25

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.,*
    553 F.3d 156 (2d Cir. 2009) (per curiam)..............................................................................21

*De la Torre v. Cassidy,*
    800 F. Supp. 3d 54 (D.D.C. 2025).................................................................................11, 12

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
    601 U.S. 42 (2024)............................................................................................................22

*Deschutes River All. v. Portland Gen. Elec. Co.,*
    1 F.4th 1153 (9th Cir. 2021) ..............................................................................................20

*Doe v. McMillan,*
    412 U.S. 306 (1973)...............................................................................................7, 9, 11

*Dombrowski v. Burbank,*
    358 F.2d 821 (D.C. Cir. 1966), *rev'd in part on other grounds sub nom.*
    *Dombrowski v. Eastland,* 387 U.S. 82 (1967) (per curiam) .......................................................11

*Dombrowski v. Eastland,*
    387 U.S. 82 (1967) (per curiam)..................................................................................7

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975)................................................................................7, 8, 12, 13, 14

*Equal Vote Am. Corp. v. Cong.,*
    397 F. Supp. 3d 503 (S.D.N.Y. 2019), *aff'd in part, remanded in part sub nom.*
    *Liu v. U.S. Cong.,* 834 F. App'x 600 (2d Cir. 2020)..............................................................22

*Errico v. Stryker Corp.,*
    281 F.R.D. 182 (S.D.N.Y. 2012) ........................................................................................21

*Exxon Corp. v. FTC,*
    589 F.2d 582 (D.C. Cir. 1978) ...........................................................................................15

*Fakhreddine v. Univ. of Pennsylvania,*
    No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025)....................................................27

*Fakhreddine v. Univ. of Pennsylvania,*
    No. 25-1290, 2026 WL 74593 (3d Cir. Jan. 9, 2026)..............................................................16

*Fluent v. Salamanca Indian Lease Auth.,*
    928 F.2d 542 (2d Cir. 1991)................................................................................................20

*Gravel v. United States*,
  408 U.S. 606 (1972)................................................................................................6, 7

*Grossman v. United States*,
  No. 19-cv-9191, 2019 WL 5887365 (S.D.N.Y. Nov. 8, 2019)..................................23

*Harris v. McRae*,
  448 U.S. 297 (1980)..................................................................................................23

*Hearst v. Black*,
  87 F.2d 68 (D.C. Cir. 1936)........................................................................................9

*Helstoski v. Meanor*,
  442 U.S. 500 (1979)....................................................................................................7

*Horne v. Flores*,
  557 U.S. 433 (2009)..................................................................................................15

*In re MTBE Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)........................................................................................17

*In re Zarnel*,
  619 F.3d 156 (2d Cir. 2010)......................................................................................18

*Jud. Watch, Inc. v. Schiff*,
  998 F.3d 989 (D.C. Cir. 2021)..................................................................................7, 8

*Kamen v. AT&T*,
  791 F.2d 1006 (2d Cir. 1986)......................................................................................5

*Kennedy v. Warren*,
  66 F.4th 1199 (9th Cir. 2023)....................................................................................25

*Kenshoo, Inc. v. Aragon Advert., LLC*,
  586 F. Supp. 3d 177 (E.D.N.Y. 2022)........................................................................24

*Khalil v. Trustees of Columbia Univ. in New York*,
  No. 25-cv-2079, 2026 WL 775813 (S.D.N.Y. March 19, 2026)..........................11, 13, 15, 27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)..................................................................................................11

*Lacewell v. Off. of Comptroller of Currency*,
  999 F.3d 130 (2d Cir. 2021)......................................................................................17

*Lane v. Pena*,
  518 U.S. 187 (1996)..................................................................................................22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................15, 16, 17

*Maarawi v. U.S. Cong.*,
  24 F. App'x 43 (2d Cir. 2001) ....................................................................................22

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019)....................................................................................................26

*Martin-Trigona v. Shiff*,
  702 F.2d 380 (2d Cir. 1983)........................................................................................18

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013)........................................................................................19

*McGrain v. Daugherty*,
  273 U.S. 135 (1927)....................................................................................................13

*Miller v. Transamerican Press, Inc.*,
  709 F.2d 524 (9th Cir. 1983) ......................................................................................10

*Nat'l Broad. Co. v. Commc'ns Workers of Am*,
  860 F.2d 1022 (11th Cir. 1988) ..................................................................................25

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013)........................................................................................18

*NRA v. Vullo*,
  602 U.S. 175 (2024)........................................................................................13, 24, 25

*Papasan v. Allain*,
  478 U.S. 265 (1986)....................................................................................................23

*Rangel v. Boehner*,
  785 F.3d 19 (D.C. Cir. 2015).......................................................................................12

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)....................................................................................................20

*Sabri v. United States*,
  541 U.S. 600 (2004)....................................................................................................14

*Scott v. City of White Plains*,
  No. 10-cv-1887, 2012 WL 1267873 (S.D.N.Y. Apr. 10, 2012) ...................................5

*SEC v. Comm. on Ways & Means*,
  161 F. Supp. 3d 199 (S.D.N.Y. 2015)..........................................................................10

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017)....................................................................................8, 10, 11

*Seneca Nation of Indians v. New York*,
383 F.3d 45 (2d Cir. 2004) (per curiam)...................................................................................20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).............................................................................................................15, 17

*United States v. Biaggi*,
853 F.2d 89 (2d Cir. 1988)...........................................................................................................8

*United States v. Brewster*,
408 U.S. 501 (1972).................................................................................................................6, 7

*United States v. Shkreli*,
No. 15-cr-637, 2017 WL 3608252 (E.D.N.Y. May 16, 2017).................................................27

*Watkins v. United States*,
354 U.S. 178 (1957)......................................................................................................................8

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
788 F.2d 765 (D.C. Cir. 1986)..............................................................................................21, 22

**Legislative Authorities**

PROTECT Jewish Student and Faculty Act, H.R. 406, 119th Cong. (2025),
https://www.congress.gov/bill/119th-congress/house-bill/406/text .......................................14

Protecting Students on Campus Act of 2025, H.R. 6857, 119th Cong. (2025),
https://www.congress.gov/bill/119th-congress/house-bill/6857/text .....................................14

Rules of the House of Representatives,
119th Cong. (2025), https://perma.cc/QD7D-WRAX

House Rule X.1(e) ..................................................................................................................3

House Rule X.2(a)-(b) ...........................................................................................................4

House Rule X.2(b)(1)..............................................................................................................4

Staff of H. Comm. on Education and the Workforce, et al., 118th Cong., Rep. on
Antisemitism (Comm. Print 2024) (Staff Report),
https://perma.cc/9SBA-HUMK ...............................................................................................4

Staff of H. Comm. on Education and the Workforce, 118th Cong., Rep. on
Antisemitism on College Campuses Exposed (Comm. Print. 2024)
(Committee Report), https://perma.cc/268S-8FPZ....................................................................4

**Constitution**

U.S. Const. art. I, § 5, cl. 2.................................................................................................3

U.S. Const. art. I, § 6, cl. 1.................................................................................................6

**Statutes & Rules**

20 U.S.C. § 1232g(b)(1) ...................................................................................................17

Fed. R. Civ. P. 19(a)(1)(B) ...............................................................................................19

Fed. R. Civ. P. 19(b) .........................................................................................................19

**Other Authorities**

Am. Compl., *Fakhreddine v. Univ. of Pa.*,
    No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 35 ...................................27

Bureau of Counterterrorism, *Foreign Terrorist Organizations*,
    U.S. Dep't of State, https://perma.cc/S394-UBC4 .....................................................3

Cristle Collins Judd, *From the President's Desk*,
    Sarah Lawrence Coll. (Nov. 20, 2024), https://perma.cc/3YQP-RWR3 .................................3

Ex. 1 to Decl. of David Gringer, *Fakhreddine v. Univ. of Pa.*,
    No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 47-2 ..........................26, 27

*Hamas Covenant 1988*, The Avalon Project,
    https://perma.cc/VW9J-QMDP.................................................................................3

John F. Kennedy, 35th President of the United States,
    Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963),
    https://perma.cc/8UEZ-C665 ..................................................................................3

News Release, U.S. Dep't of Def.,
    Statement by Secretary of Defense Lloyd J. Austin III Marking One Year
    Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024),
    https://perma.cc/42QC-FJZ2....................................................................................2

Steve McGuire (@sfmcguire79), X (Dec. 8, 2024, 12:04 PM),
    https://perma.cc/7PVJ-55Q5...................................................................................3

**INTRODUCTION**

In the aftermath of the October 7, 2023 terrorist attacks in Israel, a wave of antisemitism swept over our nation's college campuses, leading to discrimination against Jewish students at institutions of higher education receiving billions of dollars in federal funds.  Rather than sit idly by and watch this happen, the Committee on Education and Workforce of the U.S. House of Representatives (Committee)—having been delegated the House's legislative jurisdiction related to education—sprang into action to combat this troubling trend.  The Committee launched an investigation to assess the need for legislative reforms and develop appropriate solutions.  As part of its investigation, the Committee sought information from various institutions including Sarah Lawrence College (SLC).  Nothing in the Constitution bars Congress from investigating these matters of significant public and legislative concern.

Plaintiffs' suit is nothing but a futile attempt to stop the Committee's important work.  Among other reasons why Plaintiffs' suit must fail, the Speech or Debate Clause of the U.S. Constitution absolutely bars claims against the Committee and its Chairman Tim Walberg (the Congressional Defendants) for the legislative act of seeking, by letter, specific information from SLC as part of a Committee investigation into antisemitism on college campuses.  Similarly, the Clause and well-established separation-of-powers principles prevent this Court from granting the extraordinary relief that Plaintiffs seek in their First Amended Complaint, including an injunction against the Committee's use of information already in its possession.  Nor has the Committee coerced SLC to do anything.  Rather, it simply asked SLC to *voluntarily* produce documents.  In sum, because the Congressional Defendants are immune, the relief requested by Plaintiffs is unconstitutional, and the Committee's actions raise no First Amendment concerns, Plaintiffs' suit must be dismissed.

1

**BACKGROUND**

On October 7, 2023, Hamas terrorists attacked Israel, killing over a thousand innocent civilians and taking hundreds hostage.[1]  Rather than supporting their beleaguered and bereaved Jewish classmates and colleagues, many SLC students and faculty besieged them.  Beginning after the October 7 attacks, a series of antisemitic incidents rocked SLC.  For example, as outlined in letters the Committee has sent to SLC, a Jewish student "received violent and threatening text messages from members of the Sarah Lawrence's chapter of Students for Justice in Palestine (SJP) … .  This included a message telling him that he 'should have been killed in Israel.'  He left Sarah Lawrence in part because of the college's 'refusal to protect him.'"  Decl. of Kent Talbert (Decl.), Ex. D at 1-2 (footnote omitted).  Similarly, "[m]ultiple other students have also left Sarah Lawrence or considered doing so because of antisemitism on campus." *Id*. at 2.  In fact, SLC admits that "[t]here has been an alarming rise in antisemitism nationwide in the wake of the October 7, 2023 Hamas terrorist attack, including on college campuses.  Sarah Lawrence has not been immune from this."  Decl., Ex. B at 2.

Perhaps the most alarming event occurred in November 2024 when SLC SJP students took over and occupied Westlands, SLC's main administrative building.  They hung posters displaying messages like "Long live the Intifada" and "Peace is a white man's word.  Liberation is our word," signaling that the building was an unwelcome place for Jewish people.  Decl., Ex. A at 1.  The students themselves acknowledged that they did this to "answer[] [Hamas's] call"

---

[1] News Release, U.S. Dep't of Def., Statement by Secretary of Defense Lloyd J. Austin III Marking One Year Since Hamas' October 7th Terrorist Assault on the State of Israel (Oct. 7, 2024), https://perma.cc/42QC-FJZ2.

"for an escalation."[2]  Thus, SLC students acted on cue from a designated Foreign Terrorist

Organization[3] whose founding charter is premised on a "struggle against the Jews."[4]

SLC is a recipient of federal funding.[5]  As President John F. Kennedy stated in calling for

the enactment of the Civil Rights Act of 1964:

> [J]ustice requires that public funds … not be spent in any fashion which encourages,
> entrenches, subsidizes, or results in racial discrimination.  Direct discrimination …
> is prohibited by the Constitution.  But indirect discrimination, through the use of
> Federal funds, is just as invidious.[6]

In this vein, responding to the numerous antisemitic incidents that have occurred on SLC's

campus and numerous other campuses across our nation, the Committee began investigating

antisemitism in higher education, including SLC's handling of such incidents.

Pursuant to the Constitution's Rulemaking Clause, U.S. Const. art. I, § 5, cl. 2, the House

has delegated to the Committee its extensive legislative powers related to education.  *See* Rule

X.1(e), Rules of the House of Representatives, 119th Cong. (2025) (House Rules),

https://perma.cc/QD7D-WRAX.  House Rules also delegate to the Committee "general oversight

responsibilities" intended to enable it "to assist the House" in reviewing "the application,

administration, execution, and effectiveness of Federal laws," "conditions and circumstances that

---

[2] Steve McGuire (@sfmcguire79), X (Dec. 8, 2024, 12:04 PM), https://perma.cc/7PVJ-55Q5.

[3] Bureau of Counterterrorism, *Foreign Terrorist Organizations*, U.S. Dep't of State, https://perma.cc/S394-UBC4.

[4] *Hamas Covenant 1988*, The Avalon Project, https://perma.cc/VW9J-QMDP.

[5] *See* Cristle Collins Judd, *From the President's Desk*, Sarah Lawrence Coll. (Nov. 20, 2024), https://perma.cc/3YQP-RWR3.

[6] John F. Kennedy, 35th President of the United States, Special Message to the Congress on Civil Rights and Job Opportunities (June 19, 1963), https://perma.cc/8UEZ-C665.

may indicate the necessity or desirability of enacting new or additional legislation," and the "formulation, consideration, and enactment of changes in Federal laws." House Rule X.2(a)-(b). To do that, the Committee must, among other things, examine how existing laws are being administered and how effective they are. *See* House Rule X.2(b)(1).

Accordingly, the Committee commenced its overarching investigation into antisemitism on college campuses during the 118th Congress. The Committee requested information from and held hearings with numerous schools. Based on the information gathered, on October 31, 2024, the Committee released a report explaining that its "interest [was] in ensuring … universities comply with Title VI," and that "the Committee's investigation will inform potential legislative reforms to existing federal law" because the "outbreak of vicious antisemitism in postsecondary education" "is a subject on which legislation 'could be had.'" [7] The Committee Report documented the pervasive antisemitism infecting college campuses, notably concluding that the "totality of circumstances on these campuses demonstrate an environment hostile to Jewish students likely in violation of Title VI [of the Civil Rights Act of 1964]." [8] The Committee also contributed to another report, which was released on December 18, 2024, and included legislative recommendations for combatting antisemitism on college campuses. [9]

As to SLC, the Committee began its investigation on March 27, 2025, sending a letter to SLC requesting categories of information relating to the Westlands occupation, an award given

---

[7] *See* Staff of H. Comm. on Educ. and the Workforce, 118th Cong., Rep. on Antisemitism on College Campuses Exposed 7 (Comm. Print. 2024) (Committee Report), https://perma.cc/268S-8FPZ.

[8] *Id*. at 122.

[9] *See* Staff of H. Comm. on Educ. and the Workforce, et al., 118th Cong., Rep. on Antisemitism 18–19 (Comm. Print 2024) (Staff Report), https://perma.cc/9SBA-HUMK.

to SLC SJP, and student disciplinary records relating to antisemitic incidents. Decl., Ex. A at 3-4. Because this investigation "raised additional questions regarding the environment Jewish students have faced on campus," the Committee wrote to SLC again on June 11, 2025, listing antisemitic incidents that had occurred on campus and requesting documents relating to the Westlands occupation as well as several other topics, including the bullying and harassment of a Jewish student. Decl., Ex. D at 1. In that letter, the Committee stated that it was "continuing to investigate and gather information about the rise of antisemitism on college campuses, including reported antisemitic incidents at [SLC]" to further "inform the Committee's consideration of whether there is a need for legislative reforms to protect Jewish students on college campuses." *Id.*

SLC produced documents in a rolling fashion. *See* Decl., Exs. B-C, E-K. In its productions, SLC fully redacted student names and other personally identifiable information (PII), which SLC believed to be necessary under the Family Educational Rights and Privacy Act (FERPA).[10] The Committee does not intend to ask SLC for that information. Decl. ¶ 14. And while the Committee's overarching investigation into antisemitism on college campuses continues, because SLC has responded to the Committee, the Committee does not have any pending or future requests for SLC. *Id.*

On August 5, 2025, Plaintiffs filed this lawsuit. ECF 1. After premotion conference letters and two premotion conferences, Plaintiffs filed their First Amended Complaint (FAC) on

---

[10] *See* Decl. ¶ 13 & Exs. B at 4, C at 2, F at 1, G at 1, H at 1, I at 1, and K at 1; *see also* ECF 9 at 2 n.2. "[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter[s] may be presented by affidavit or otherwise." *Kamen v. AT&T*, 791 F.2d 1006, 1011 (2d Cir. 1986). Likewise, the Court may rely on SLC's statement that it redacted all student identifying information because a "Court may consider admissions contained in … briefs (and the exhibits thereto) on a motion to dismiss." *Scott v. City of White Plains*, No. 10-cv-1887, 2012 WL 1267873, at *8 n.7 (S.D.N.Y. Apr. 10, 2012).

March 20, 2026.  ECF 25.  Count I, the sole count lodged against the Congressional Defendants, alleges that "[t]he Committee's demand that the College relinquish to it individual student records violates the First Amendment."  *Id*. at 49.  The FAC requests declaratory and injunctive relief, compensatory damages, and attorney's fees.

**ARGUMENT**

Count I should be dismissed for lack of subject matter jurisdiction and because it does not state a claim upon which relief can be granted.

**I.    The Court Lacks Subject Matter Jurisdiction Over Count I**

There are five separate and independent reasons that this Court lacks subject matter jurisdiction over Count I.  *First*, the Speech or Debate Clause absolutely shields Congressional Defendants from this suit.  *Second*, Plaintiffs lack standing.  *Third*, Plaintiffs' suit is not ripe and/or is moot.  *Fourth*, Congressional Defendants are necessary parties to Count I under Rule 19, but because they are immune, they cannot be joined and this Court therefore may not adjudicate Count I as it relates to SLC.  And *fifth*, sovereign immunity bars Plaintiffs' claim for damages.

**A.    The Speech or Debate Clause Bars Plaintiffs' Suit and Requested Relief**

Because the Speech or Debate Clause absolutely bars Plaintiffs' suit and requested relief, Count I against the Congressional Defendants must be dismissed.

**1.    The Speech or Debate Clause**

The Speech or Debate Clause mandates that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1.  By "freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct," *Gravel v. United States*, 408 U.S. 606, 618 (1972), the Clause both "preserve[s] the independence and ... integrity of the legislative process," *United States v.*

6

*Brewster*, 408 U.S. 501, 524 (1972), and "reinforc[es] the separation of powers," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (citation omitted).

The Clause's absolute immunity extends to all civil actions. *See id.* at 503. It protects federal legislators "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam). Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). Accordingly, the Supreme Court has repeatedly, and "[w]ithout exception, … read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. The Clause provides, among other things, immunity from suit with respect to all actions "within the 'legislative sphere.'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel*, 408 U.S. at 624-25). The protections of the Clause apply to both Members and Committees. *See, e.g.*, *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 991-93 (D.C. Cir. 2021). And the Supreme Court has stated unequivocally that when the challenged "actions of the [Committee] fall within the sphere of legitimate legislative activity," legislators "shall not be questioned in any other Place about those activities since the prohibitions of the Speech or Debate Clause are absolute." *Eastland*, 421 U.S. at 501 (cleaned up); *see also id.* at 503, 509 n.16, 509-10.

### 2. Information-Gathering and the Use of That Information Are Legislative Acts

The types of "legislative activity" protected by the Clause include much more than just speaking or debating on the House floor or participation in committee activities. The "cases have plainly not taken a literalistic approach in applying the privilege. … Committee reports, resolutions, and the act of voting are equally covered… ." *Gravel*, 408 U.S. at 617. Relevant

here, the Supreme Court has found that the "power to investigate" is within the legislative sphere. *See Eastland*, 421 U.S. at 504. That is so because a "legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Id.* (citation omitted). To formulate legislation, or to understand the topics debated in Congress, legislators must have all relevant information. Thus, the "power of the Congress to conduct investigations is inherent in the legislative process." *Watkins v. United States*, 354 U.S. 178, 187 (1957). In fact, "[t]he scope of [Congress's] power of inquiry ... is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

Courts have consistently held that all modes of congressional information-gathering, from informal data collection to subpoenas, are legislative acts absolutely protected by the Clause. *See, e.g.*, *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("[I]nformation gathering letters constitute protected legislative acts."), *aff'd*, 23 F.4th 1028 (D.C. Cir. 2022); *Jud. Watch*, 998 F.3d at 992 ("[T]he Committee's issuance of subpoenas … was a legislative act protected by the Speech or Debate Clause."); *United States v. Biaggi*, 853 F.2d 89, 102-03 (2d Cir. 1988) (legislative fact-finding during congressional trip protected by Clause).

Likewise, the Clause "affords Congress a 'privilege to use materials in its possession without judicial interference.'" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017) (citation omitted). Once information is in Congress's possession, courts may not curtail legislators' use of that information within the legislative sphere. *Doe v. McMillan* is particularly instructive here. In that case, a House committee investigated the Washington, D.C. public school system and published its findings in a report.

412 U.S. at 307-08.  The report "specifically named students" who had "disciplinary problems."

*Id*. at 308 & n.1.  The parents sought an injunction to stop the report from being published,

disseminated, or distributed.  *Id*. at 309-10.  The Supreme Court flatly rejected this request,

stating that "it is plain to us that the complaint in this case was barred by the Speech or Debate

Clause."  *Id*. at 312.  As the Court explained, the Clause "includes within its protections anything

generally done in a session of the House by one of its members in relation to the business before

it."  *Id*. at 311 (cleaned up).  As a result, it held that "[a]lthough we might disagree with the

Committee as to whether it was necessary, or even remotely useful, to include the names of

individual children in the ... Committee Report, we have no authority to oversee the judgment of

the Committee in this respect."  *Id*. at 313.

　　Similarly, in *Hearst v. Black*, the plaintiff sought to enjoin a Senate Committee from

"keeping" or "making any use of" allegedly illegally seized messages.  87 F.2d 68, 68-71 (D.C.

Cir. 1936).  As here, the plaintiff argued that the congressional investigation violated his

Constitutional rights.  *See id.* at 68-69.  While the D.C. Circuit accepted his allegations as true

and even determined that the seizure of the messages had been unlawful, a unanimous panel held

that the "universal rule … is that the legislative discretion in discharge of its [C]onstitutional

functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference."

*Id*. at 71.  This principle of non-interference in congressional investigations has been applied

consistently.  For instance, in *Brown & Williamson Tobacco Corp. v. Williams*, the D.C. Circuit

declined to enforce subpoenas directed to Members of Congress seeking the return of allegedly

stolen documents, recognizing that a "corollary—to [its] right to pursue investigations is

Congress'[s] privilege to use materials in its possession without judicial interference."  62 F.3d

408, 416 (D.C. Cir. 1995) (citations omitted).  Similarly, in *Ferrer*, the D.C. Circuit denied the

9

plaintiff's request for an order directing the return or destruction of documents provided to a Senate subcommittee.  856 F.3d at 1086.  *Ferrer* expressly reaffirmed both *Hearst* and *Brown & Williamson*, holding that if the Court were to issue such an order, it would "destroy" "the independence of the Legislature" and "invade" "the [C]onstitutional separation of powers."  *Id.* (cleaned up).

### 3.    The Speech or Debate Clause Requires Dismissal of Count I

Here, the Clause protects the legislative acts Plaintiffs are challenging: specifically, the Committee's investigation, its fact-gathering in support thereof (*i.e.*, the two letters to SLC), and any legislative use of the acquired information.

For starters, the Committee's letters to SLC are legislative acts protected by the Clause. *See Ass'n of Am. Physicians & Surgeons*, 518 F. Supp. 3d at 518.  Thus, Plaintiffs' request that this Court declare that the Committee's "actions, policies, and practices complained of herein violate Plaintiffs' rights under the First and Fourteenth Amendments" ECF 25 at 57, is a demand for an unconstitutional declaratory judgment.  Any future efforts by the Committee to obtain records from SLC (or any other university) would also constitute "[c]ongressional information gathering activities" to which the protections of the Clause would extend.  *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015); *see Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House.'" (citation omitted)).

Likewise, Plaintiffs' request that this Court enjoin Congressional Defendants from "[d]isclosing, publishing, or distributing to any outside party, or otherwise making use of … confidential or FERPA-protected information referring or relating to Plaintiffs," ECF 25 at 57-58, asks this Court to issue an unconstitutional order.  The Clause "affords Congress a 'privilege

to use materials in its possession without judicial interference.'" *Ferrer*, 856 F.3d at 1086 (citation omitted). Indeed, if "a congressional committee [can use] information it had obtained by illegal means," *Dombrowski v. Burbank*, 358 F.2d 821, 824 (D.C. Cir. 1966) (describing the *Hearst* decision), *rev'd in part on other grounds sub nom. Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam), or issue a report that specifically identifies children by name, *Doe*, 412 U.S. at 307-11, then Plaintiffs and this Court cannot constrain the Committee's use of lawfully acquired records of legal-age adults which do not even contain the students' names or other PII, *see supra* note 10.

Accordingly, this Court should adopt the conclusion of Judge Subramanian in an earlier-filed sister-suit that raises many of the same issues. In that case, Columbia University students sued Columbia and the Congressional Defendants to stop Columbia from producing student records to the Committee. *Khalil v. Trustees of Columbia Univ. in New York*, No. 25-cv-2079, 2026 WL 775813, at *1 (S.D.N.Y March 19, 2026). But Judge Subramanian granted Congressional Defendants' motion to dismiss, holding that because the Committee's letter to Columbia requesting student records was part of its "power to investigate," "the Congressional defendants are immune from suit." *Id.* at *3-*4.

### 4. Plaintiffs Cannot Overcome the Clause

Since federal courts have "limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Thus, because the Clause is a jurisdictional concept, to overcome its "immunity[, Plaintiffs] must show that it is inapplicable to avoid dismissal." *De la Torre v. Cassidy*, 800 F. Supp. 3d 54, 61 (D.D.C. 2025). Plaintiffs cannot satisfy this burden.

11

Plaintiffs try the "'familiar argument—made in almost every Speech or Debate Clause case'—that the 'defendants' conduct cannot be legislative because it was, in [Plaintiffs'] view, illegal.'" *Id.* at 65 (quoting *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015)). But this argument "has been rejected time and again." *Rangel,* 785 F.3d at 24. "An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules or even the Constitution. Such is the nature of absolute immunity, which is—in a word—absolute." *Id.* (citations omitted). Thus, Plaintiffs' allegation that "the Speech and Debate clause does not shield the Committee because it is pursuing an illegitimate, illegal, nonlegislative purpose," is as futile as it is wrong. ECF 25 ¶ 104. "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Eastland*, 421 U.S. at 508-09. "Instead of looking into the defendants' 'motive or intent,' the standard for determining whether an act is legislative 'turns on the nature of the act' itself." *Rangel*, 785 F.3d at 24 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). Furthermore, given that the Clause is meant to protect legislators against litigation "distraction[s]," permitting Plaintiffs to plead around the Clause and thereby prolong this distraction is contrary to the Supreme Court's dictates. *See Eastland*, 421 U.S. at 503, 508-09; *see also id.* at 511 n.17 ("Although the … Clause has never been read so broadly that legislators are absolved of the responsibility of filing a motion to dismiss, the purposes which the Clause serves require that such motions be given the most expeditious treatment by district courts because one branch of Government is being asked to halt the functions of a coordinate branch." (internal quotation marks and citations omitted)).

Regardless, the Committee is engaged in a legitimate investigation into antisemitism on college campuses, springing from its oversight of federal laws and funding, and its assessment of

the need for new legislation.  The Supreme Court has cautioned that courts must assume "that the action of the legislative body was with a legitimate object, if it is capable of being so construed, and [the court] ha[s] no right to assume that the contrary was intended."  *McGrain v. Daugherty*, 273 U.S. 135, 178 (1927) (citation omitted).  When Congressional committees assert they are investigating in aid of legislating, as is the case here, "the presumption should be indulged that this was the real object."  *Id.*; *see also Eastland*, 421 U.S. at 508 ("[I]n determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it."); *Bragg v. Jordan*, 669 F. Supp. 3d 257, 269 (S.D.N.Y. 2023) ("The Court is required to presume that a congressional committee's stated legislative object is 'the real object.'" (citation omitted)), *appeal dismissed sub nom. Bragg v. Pomerantz*, No. 23-615, 2023 WL 4612976 (2d Cir. Apr. 24, 2023).[11]

As Judge Subramanian stated, while Congressional "investigations must have a legitimate legislative purpose, … that inquiry is narrow and deferential: The Court asks only whether 'the investigation upon which the [Committee] had embarked concerned a subject on which 'legislation could be had.'"  *Khalil*, 2026 WL 775813, at *3 (quoting *Eastland*, 421 U.S. at 506).  "[T]he legitimate legislative purpose bar is a low one, and the purpose need not be clearly articulated."  *Id.* (quoting *Comm. on Ways & Means, U.S. House of Representatives v.*

---

[11] Plaintiffs list remarks made by Committee Members, ECF 25 ¶¶ 39-63, and assert "this evidence would be admissible at trial," *id.* ¶ 41.  But many of these statements were made during congressional hearings, *see id.* ¶¶ 45, 46, 61, 62, and some while "speaking on the House floor," *id.* ¶ 63.  Plaintiffs also point to the votes of certain Members.  *See id.* ¶¶ 59, 60.  These allegations violate the core of the <u>Speech</u> or <u>Debate</u> Clause.  They are also "irrelevant" to whether the Committee has a legislative purpose.  *See Bragg*, 669 F. Supp. 3d at 269.  Finally, because "[t]he government can say what it wishes and select the views that it wants to express" "it necessarily takes a particular viewpoint and rejects others, and thus does not need to maintain viewpoint-neutrality when its officers and employees speak about that venture."  *NRA v. Vullo*, 602 U.S. 175, 187 (2024) (cleaned up).

*U.S. Dep't of Treasury*, 575 F. Supp. 3d 53, 64 (D.D.C. 2021)).  Here, the Committee's investigation and its requests for information from SLC concern "a subject on which 'legislation could be had.'"  *Eastland*, 421 U.S. at 506 (citation omitted).  For one thing, because Congress holds the power of the purse, it may examine whether federal funds are flowing to institutions that are not taking adequate steps to remedy a pervasively hostile environment for Jewish students.  That alone is a subject upon which "legislation could be had," *see Sabri v. United States*, 541 U.S. 600, 608 (2004), and student disciplinary records involving antisemitic incidents, antisemitism awareness trainings, and other records requested by the Committee are plainly relevant to that inquiry.  In fact, legislation has already been introduced on this subject.[12]

The Committee is also concerned with monitoring compliance with federal anti-discrimination laws, like Title VI, and developing additional legislation that may stem the rising tide of antisemitism on college campuses.  "Congress may conduct inquiries into the administration of existing laws, studies of proposed laws, and [particularly relevant here,] surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them."  *Bragg*, 669 F. Supp. 3d at 267 (alteration in original).  In fact, earlier this Congress, H.R. 6857, the Protecting Students on Campus Act of 2025, was introduced, which, if enacted, would require institutions of higher education receiving federal funds to submit an annual report to the Department of Education's Inspector General that includes analysis related to complaints received by the institution under Title VI.[13]

---

[12] *See, e.g.*, PROTECT Jewish Student and Faculty Act, H.R. 406, 119th Cong. (2025) (requiring universities, as a condition of receiving federal student aid, to adopt a standard definition of antisemitism and prohibit such conduct on campus), https://www.congress.gov/bill/119th-congress/house-bill/406/text.

[13] Protecting Students on Campus Act of 2025, H.R. 6857, 119th Cong. § 4(a) (2025), https://www.congress.gov/bill/119th-congress/house-bill/6857/text.

In sum, as Judge Subramanian held: "the Committee articulated a valid legislative purpose for its [letter to Columbia]: To investigate targeting, harassment, and violence directed at Jewish students at Columbia, which receives federal funding." *Khalil*, 2026 WL 775813, at *4. The same is true here, and this "satisfies the Court's narrow scope of inquiry." *Id*.

### B. Plaintiffs Lack Standing

The "threshold issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III,'" and must be met for a court's jurisdiction to vest. *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he party invoking federal jurisdiction[] bears the burden of establishing these elements." *Id*. Plaintiffs have failed to meet their burden.

*First*, Plaintiffs have not alleged any cognizable injury. "To establish injury in fact, a plaintiff must show that he … suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan*, 504 U.S. at 560). Here, Plaintiffs allege that their injury is "concern[] about exposure of … private correspondence leading to doxing, harassment, and other forms of harm." ECF 25 ¶ 163. But the "release of information to the Congress does not constitute 'public disclosure,'" and "courts must presume that the committees of Congress will exercise their powers responsibly and with due regard for the rights of affected parties." *Exxon Corp. v. FTC*, 589 F.2d 582, 589 (D.C. Cir. 1978). Regardless, the records turned over to the Committee were redacted to protect students' identities, *see supra* note 10, and the Committee does not intend to

15

ask for any such identities, Decl. ¶ 14.  Thus, they are not injured, and any "concern" about doxing is purely hypothetical.[14]  Indeed, in a similar case concerning a challenge to a letter the Committee sent to the University of Pennsylvania (Penn), the Third Circuit held that because the plaintiffs there at most alleged that the produced documents "might mention" plaintiffs, and that it was "impossible … to know … what Penn has produced," any injury was "premised on speculation."  *Fakhreddine v. Univ. of Pa.*, No. 25-1290, 2026 WL 74593, at *4 (3d Cir. Jan. 9, 2026) (citations omitted).  Likewise, here, given the redactions, any injury is "premised on speculation."

*Second*, Plaintiffs have failed to plausibly allege traceability.  Traceability requires "the injury … to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (alterations in original) (citation omitted).  But for the student Plaintiffs, it is non-party actors who would be doing the alleged harassing and doxing at some undefined point in the future.  *See* ECF 25 ¶ 166 ("Maeve reasonably fears that the College's disclosure of [records] would invite private doxing organizations … exposing her to harassment, rape threats, and death threats."); *id*. ¶ 186 ("[W]ere the College to disclose information to the Committee, [Gullette] and her peers would be targets of violence from individual political actors, private doxing groups, and the Trump administration… .").  And as for Professor Gardinier, the FAC alleges that her injuries stem from the actions of another SLC professor.  *Id*. ¶ 178 ("On April 30, 2024,

---

[14] This is especially true for those Plaintiffs who failed to allege that their records were turned over to the Committee.  *See* ECF 25 ¶ 171 (Plaintiff Carlisle admitting that she was not "involved in the occupation of … Westlands" and "has not been … accused of anything or faced disciplinary charges.").  She therefore cannot claim past or future injury.

Professor Abrams published an article directly defaming Professor Gardinier as a 'known antisemite… .'"). It is unclear how her injuries relate to the Committee's requests. Thus, all Plaintiffs fail to plausibly plead traceability because their own allegations reflect that their injury is "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (citation omitted).

*Finally*, Plaintiffs have failed to plausibly allege redressability. Because the Speech or Debate Clause absolutely protects the Committee's right to request and use information, as a matter of law, Plaintiffs cannot demonstrate that their alleged injury is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

### C.    Plaintiffs' Suit Is Not Ripe and/or Is Moot

"[R]ipeness 'prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'" *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (citation omitted). It "overlaps with the standing doctrine … in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (internal quotation marks and citations omitted).

Here, Plaintiffs demand that the Committee be prohibited from using "confidential or FERPA-protected information referring or relating to Plaintiffs." ECF 25 at 57-58. Assuming FERPA applies to Congress, the Committee never received FERPA-protected information in the first place because SLC redacted all student names and PII from the records it produced.[15] *See supra* note 10. The same is true for confidential information referring or relating to the student

---

[15] The same is true for Professor Suzanne Gardinier. Because FERPA only protects "student" "education records," 20 U.S.C. § 1232g(b)(1), it is impossible for the Committee to have FERPA information relevant to her as FERPA does not protect her information.

Plaintiffs: because their identities are redacted, there is no information (confidential or not) that can be determined to refer or relate to them.  Thus, Plaintiffs' suit is not ripe because "it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (citation omitted).

To the extent Plaintiffs allege injury from the Committee's investigation itself, the case against the Congressional Defendants is moot.  "Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies."  *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).  Here, no relief is needed because the Committee does not have any pending or future requests for SLC.  *See* Decl. ¶ 14.

> **D.    Because Congressional Defendants Are Necessary Parties Under Rule 19, Count I Must Be Dismissed in Its Entirety**

Count I is against both Congressional Defendants and SLC.  ECF 25 at 49-52.  But because the claim against SLC is based on SLC's response to the Committee's requests, it rises or falls upon the allegations against the Committee.  Therefore, Congressional Defendants are necessary parties under Federal Rule of Civil Procedure 19.  But, as discussed above, the Speech or Debate Clause confers absolute immunity on Congressional Defendants.  And because the Rule 19 factors weigh decisively against proceeding without them, Count I must also be dismissed as to SLC.

Rule 19(a) establishes a three-part test for determining whether joinder is required.  First, a court must determine whether, as set forth in Rule 19(a)(1), the party is necessary for a just adjudication.  *See ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681

(2d Cir. 1996).  Second, a court must evaluate whether joinder of that party is feasible.  *See id*.

Third, if joinder is not feasible, the court then turns to Rule 19(b), which "requires courts to

consider whether, 'in equity and good conscience,' the party is one without whom the action

between the remaining parties cannot proceed."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119,

132 (2d Cir. 2013) (quoting Fed. R. Civ. P. 19(b)).

### 1.    Congressional Defendants Are Required Parties

A party is "required" if that party "claims an interest relating to the subject of the action

and is so situated that disposing of the action in the person's absence may: (i) as a practical

matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).  Because the Committee's letters form the

basis of Count I, Congressional Defendants have "an interest relating to the subject of the action"

and are required parties.  *Id*.  Further, because Plaintiffs seek to enjoin SLC from sharing

information with the Committee, the absence of Congressional Defendants from this suit would

impair the Committee's ability to protect its interests, which are distinct from SLC's.  Thus,

Congressional Defendants are required parties.

### 2.    Congressional Defendants Are Immune from Suit

Congressional Defendants must be dismissed from this suit because they are absolutely

immune under the Speech or Debate Clause.  *See supra* Section I.A.  Joinder is therefore not

feasible under Rule 19.  Rule 19(b) provides that if a party "who is required to be joined if

feasible cannot be joined, the court must determine whether, in equity and good conscience, the

action should proceed among the existing parties or should be dismissed."  In similar cases

where, as here, "an indispensable party is immune from suit, there is very little room for

19

balancing of other factors set out in [r]ule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (alteration in original) (cleaned up).  Indeed, immunity can be dispositive "in the weighing of [R]ule 19(b) factors" because the inability to join the absent party does not stem from "some procedural defect such as venue," but from the substantive choice "to shield [the absent party] from suit."  *Id.* at 548 (citation omitted).

Courts regularly dismiss cases under Rule 19 when a necessary party is immune from suit.  *See, e.g.*, *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) ("[T]here is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity… ." (alteration in original) (citation omitted)); *Seneca Nation of Indians v. New York*, 383 F.3d 45, 48 (2d Cir. 2004) (per curiam) (noting other Rule 19(b) factors were "outweighed by the paramount importance to be accorded to … immunity from suit" (quotation marks and citation omitted)).  Speech or Debate Clause immunity should not function differently from sovereign immunity for Rule 19 purposes.  Moreover, because the Clause, unlike sovereign immunity, is explicitly mentioned in the Constitution, if there is a difference between the two for Rule 19 purposes, the weight given to Congress under Rule 19(b) should be greater, not lesser, than that given to Tribes, States, or foreign nations.  As a result, the Court should hold here for the Speech or Debate Clause what the Supreme Court held in a case involving Rule 19 and foreign sovereign immunity, because "immunity is asserted, and the claims of the [Congressional Defendants] are not frivolous, dismissal of the action must be ordered" because "there is a potential for injury to the interests of [Congressional Defendants]."  *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008).

20

### 3.    The Rule 19(b) Factors Favor Congressional Defendants

Even setting aside the overriding importance of immunity under Rule 19, the Rule 19(b) factors favor complete dismissal of Count I.  "Rule 19(b) specifies four factors: (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit."  *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam).

The first factor "overlaps considerably with the Rule 19(a) analysis, as both require the Court to determine the potential for prejudice to existing and absent parties."  *Errico v. Stryker Corp.*, 281 F.R.D. 182, 187 (S.D.N.Y. 2012).  Since Congressional Defendants are required parties under Rule 19(a), a judgment in Plaintiffs' favor on Count I would prejudice the Committee.  Under the second factor, any prejudice to Congressional Defendants cannot be alleviated.  Plaintiffs seek to prevent SLC from sharing information with the Committee.  It is impossible to mitigate the impact of such an injunction.  As to the third factor, even if Plaintiffs would be satisfied with an order enjoining SLC from producing records to the Committee, which does not require Congressional Defendants' presence in the suit, this factor "cannot be given dispositive weight when the efficacy of the judgment would be at the cost of [Congressional Defendants'] rights to participate in litigation that critically affect their interests."  *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986).  As to the fourth factor, Plaintiffs do have another forum before which they could seek relief: Congress.  Indeed,

Plaintiffs could have raised their concerns about the letters with the Committee before filing this suit.[16]

### E.    Sovereign Immunity Bars Plaintiffs' Claim for Damages

Plaintiffs' request for compensatory damages "ignore[s] [a] well-established rule[] that shield[s] [Congressional] Defendants' actions from jurisdiction (let alone liability)[:] … 'The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities.'" *Equal Vote Am. Corp. v. Cong.*, 397 F. Supp. 3d 503, 511-12 (S.D.N.Y. 2019) (citation omitted), *aff'd in part, remanded in part sub nom. Liu v. U.S. Cong.*, 834 F. App'x 600 (2d Cir. 2020). "[T]he United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Thus, sovereign immunity bars Plaintiffs' damages "claim[] against the United States Congress as a body of the federal government or against the legislators who make up the Congress." *Maarawi v. U.S. Cong.*, 24 F. App'x 43, 44 (2d Cir. 2001).

Here, sovereign immunity applies because Plaintiffs allege conduct arising out of Congressional Defendants' official capacity. While sovereign immunity can be waived, any such waiver cannot be implied but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Plaintiffs "bear[] the burden to show that Congress waived

---

[16] Even if Plaintiffs do not have an adequate remedy, this factor cannot outweigh the protections afforded by the Speech or Debate Clause. *Cf. Hodel*, 788 F.2d at 777 ("Although we are sensitive to the problem of dismissing an action where there is no alternative forum, we think the result is less troublesome in this case than in some others. The dismissal of this suit is mandated by the policy of tribal immunity. … [T]he dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit … ." (footnote omitted)).

sovereign immunity." *Grossman v. United States*, No. 19-cv-9191, 2019 WL 5887365, at *2 (S.D.N.Y. Nov. 8, 2019). Plaintiffs fail to point to any waiver of sovereign immunity, and there is none. Thus, their claim for compensatory damages is precluded.

## II.    Count I Fails To State a Claim Upon Which Relief Can Be Granted

Even if this Court were able to get beyond the jurisdictional problems discussed above, the FAC does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the specific allegations must "nudge[] … claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although well-pleaded facts must be accepted as true for purposes of deciding whether the FAC states a claim for relief, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Here, for Count I, Plaintiffs fail to plausibly allege that the Committee has unlawfully coerced SLC into producing records or punishing speech, or that SLC is a state actor.[17]

---

[17] In a single sentence, Plaintiffs attempt to allege an Establishment Clause violation, claiming that the Committee is "endors[ing]" "a single faith's claims and assertions about Palestine." ECF 25 ¶ 213; *see also id.* ¶ 13. Separate from its lack of clarity, this "[t]hreadbare recital[] … supported by mere conclusory statements" cannot state a claim under *Twombly* and *Iqbal*. *Brown v. City of New York*, No. 09-cv-2337, 2010 WL 4077925, at *2 (S.D.N.Y. Oct. 13, 2010) (first alteration in original) (citation omitted). Moreover, it substantively fails to make out a cognizable Establishment Clause violation. The government does not violate the Establishment Clause because it takes a position that "happens to coincide" with a religious tenet. *Harris v. McRae*, 448 U.S. 297, 319 (1980) ("That the Judaeo-Christian religions oppose stealing does not mean that [the] … Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny."). Here, given that the Committee's investigation is rooted in its monitoring of the rising tide of antisemitism on college campuses and developing additional legislation that may address that problem, any coincidence with the belief system of a particular faith is just that, not an endorsement of a particular religion.

### A.    Plaintiffs Do Not Plausibly Allege Coercion

Plaintiffs allege that the Committee's letters "pressured [SLC] to suppress and punish student, faculty, and staff's protected speech … that the Committee disfavors." ECF 25 ¶ 202. They say that this is "jawboning." *Id*. ¶ 201. "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Vullo*, 602 U.S. at 191. Plaintiffs' claim fails.

First, nowhere in the FAC do Plaintiffs plausibly allege that the Committee has coerced SLC to produce disciplinary records. Plaintiffs' theory is that SLC's disclosure of records to the Committee, followed by the Committee's public release of that information, would allow third parties to identify and harass Plaintiffs, which will consequently chill their speech. *See* ECF 25 ¶ 203. Therefore, to plausibly allege that the Committee is seeking to indirectly suppress Plaintiffs' speech through SLC's production of records, Plaintiffs need to allege that the Committee's request for those records is itself coercive. Here though, the most that Plaintiffs can muster is the allegation that "[r]eceiving a letter from the Committee is inherently coercive." *Id*. ¶ 137. While this "[s]peculative, conclusory, or indefinite factual allegation[] [is] just as infirm as legal conclusions," *Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 186 (E.D.N.Y. 2022), it is also belied by other parts of the FAC where Plaintiffs concede that the Committee's letters are not a "subpoena or compulsory legal process" and requested only the "College's voluntary compliance," ECF 25 ¶ 16; *see also id*. ¶ 87 (noting that "the disclosure was voluntary"). Indeed, other than unsupported hyperbolic innuendo, there is no plausible allegation that any of the Committee's letters threatens SLC with a loss of funding (or anything

24

else for that matter) if SLC does not comply with the Committee's request for information.  *Cf. Kennedy v. Warren*, 66 F.4th 1199, 1208-10 (9th Cir. 2023) (Senator Warren did not coerce Amazon into violating the First Amendment by asking it to "be more proactive in suppressing misinformation" while warning it was "potentially unlawful" to publish a particular book).

The FAC also does not plausibly allege that the Committee's letters coerced SLC to take any action specifically *regarding Plaintiffs*.  Take *NRA v. Vullo* as an example, where a state actor (the New York Department of Financial Services) sought to act unlawfully upon a private party (the NRA) through an intermediary (insurance companies that insured the NRA).  602 U.S. at 181-85.  Mapped out and applied here, *Vullo* would require a state actor (the Committee), coercing a private entity (SLC), to take adverse action against another private entity (Plaintiffs).  But the Committee's letters to SLC make no asks regarding Plaintiffs; the letters act only upon SLC by asking SLC to produce records.  By contrast, the New York Department of Financial Services jawboned private insurance companies to stop insuring the NRA.  *See id.* at 192-93.

### B.    SLC Is Not a State Actor

SLC is a private university, ECF 25 ¶ 20, and so "the First … Amendment[ ], do[es] not apply … unless [it is] engaged in activity deemed to be 'state action.'"  *Cooper v. USPS*, 577 F.3d 479, 491 (2d Cir. 2009) (first and second alteration in original) (quoting *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1024 (11th Cir. 1988)).  Plaintiffs argue that SLC became a state actor when it engaged in "joint action" with the Committee, or "in the alternative[,] … due to the Committee's coercive action[, SLC] … function[s] as a state actor itself."  ECF 25 ¶¶ 141-42.  Neither argument has merit.

First, while a private actor becomes a state actor when it becomes a "willful participant in joint activity with the state," *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S.

25

288, 296 (2001) (citation omitted), that is not the case here.  Under this "close nexus" test, the actions of a private actor "may be fairly treated as that of the State" when the State is "entwined in [the private actor's] management or control."  *Id*. at 295-96.  But there are no allegations in the FAC, let alone plausible allegations, that the Committee manages or controls SLC just because the Committee seeks records from SLC.  If that was sufficient for state action, then *any* government inquiry into a private actor would turn that actor into a state actor once the private actor voluntarily complied with a request.  But, as explained below, that is not the law.  More fundamentally, Plaintiffs have not plausibly pled that any actions taken by SLC against them could only be viewed as the Committee's choice rather than SLC's.  *See Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982).  Among other things, there is no allegation that SLC took any specific action against any of the Plaintiffs in response to any of the Committee's letters.

Second, while state action can occur when "the government compels the private entity to take a particular action," *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019), Plaintiffs have not plausibly alleged that the Committee has compelled SLC to do anything, much less produce records or suppress speech.  *See supra* II.A.  Instead, Plaintiffs muddy the waters, arguing that "the government" has threatened to cut "federal grants and contracts to universities" in a misleading attempt to impute the alleged actions of a nonparty, the Executive Branch, to the Committee.  *See* ECF 25 ¶ 135.

While Plaintiffs allege that "[r]eceiving a letter from the Committee is inherently coercive," *id.* ¶ 137, that is wrong.  In the *Fakhreddine v. University of Pennsylvania* case, the Committee sent a letter to Penn requesting documents relevant to its antisemitism investigation.  Ex. 1 to Decl. of David Gringer, No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 47-2.  That letter, like the March 27 letter to SLC, simply requested the university to

26

"please produce the following items." *Compare id*. at 9, *with* Decl., Ex. A at 3.[18] Neither letter demanded the records nor mentioned any legal consequences for failing to comply. The *Fakhreddine* plaintiffs, like Plaintiffs here, brought First Amendment claims against Penn seeking to stop it from responding. *Fakhreddine*, 2025 WL 345089, at *1-*2. The district court, however, held that Penn was not a state actor because the Committee had not "coerced" it. *Id*. at *5-*6. Indeed, the court did "not find th[e] language [of the letter] coercive and apparently, neither d[id] [p]laintiffs." *Id*. at *5 (citing plaintiffs' concession in their complaint that the letter "is not a subpoena and has no legal compulsory effect" and the university's response that it was "voluntarily" complying with the letter). Here too, as explained above, Plaintiffs concede that the Committee's letters requested only the "College's voluntary compliance."[19] ECF 25 ¶ 16. In fact, the concessionary language used in both complaints is nearly identical. *Compare id*. ("the College's voluntary compliance with the Letters"), *with* Am. Compl. ¶ 8, No. 24-cv-1034, 2025 WL 345089 (E.D. Pa. Jan. 30, 2025), ECF 35 ("Penn's voluntary compliance with the Information Letter").

Finally, compliance with a government subpoena does not turn a private party into a state actor. *See Budowich v. Pelosi*, 610 F. Supp. 3d 1, 8-11 (D.D.C. 2022) (holding that "JPMorgan did not engage in state action when it complied with the congressional subpoena"); *see also*, *e.g.*, *United States v. Shkreli*, No. 15-cr-637, 2017 WL 3608252, at *6 (E.D.N.Y. May 16, 2017)

---

[18] Similarly, the Committee's June 11 letter asked SLC to "[p]lease provide these documents." Decl., Ex. D at 4.

[19] In *Khalil*, Judge Subramanian held that some plaintiffs plausibly alleged state action. 2026 WL 775813, at *12. While Congressional Defendants disagree with his conclusion, critical to his analysis (and how he distinguished *Fakhreddine*) was that the complaint in *Fakhreddine* "conceded that Penn wasn't coerced into providing the plaintiffs' records," unlike the operative complaint in *Khalil*. *Id*. Plaintiffs cannot rely on Judge Subramanian's analysis here because, as discussed, the FAC makes these concessions.

(holding that for Fourth Amendment purposes, producing documents pursuant to subpoena does not "transform the complying entity into a government agent"). If compulsory legal process does not convert private actors into state actors, then *a fortiori* SLC responding to voluntary requests for information does not change it into a state actor.

## CONCLUSION

For the foregoing reasons, Count I should be dismissed.

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY
   *General Counsel*
TODD B. TATELMAN
   *Deputy General Counsel*
ANDY T. WANG
   *Associate General Counsel*
KENNETH C. DAINES
   *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
matthew.berry@mail.house.gov

*Counsel for Congressional Defendants*

April 20, 2026

28

## CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on April 20, 2026, I caused the foregoing document to be filed via this

Court's CM/ECF system, which I understand caused service on all registered parties, and one

courtesy hard copy of this document, the Notice of Motion, and the Declaration of Kent Talbert,

to be mailed to the below address pursuant to the Court's Individual Rules of Practice 1.E and

2.B.ii:

> Chambers of The Honorable Cathy Seibel
> U.S. District Judge for the Southern District of New York
> The Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse
> 300 Quarropas Street
> Room 633
> White Plains, NY 10601-4150

I further certify that the foregoing document contains 8,748 words, which is compliant with

Local Civil Rule 7.1(c).

/s/ *Matthew B. Berry*
Matthew B. Berry