UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUZANNE GARDINIER, MAEVE AICKIN, NAZIRA
ATALLA, EMILY CARLISLE, SANA CHEEMA,
VEGA BARRADA GULLETTE, RIZIKI MBUGUA,
LIAM SHARIF MONTAGUE, LINCOLN
RICHARDSON, NORA TUCKER-KELLOGG, and
NURAH ABDULHAQQ,

Case No.: 7:25-cv-06442-CS

                  Plaintiffs,

   -vs-

SARAH LAWRENCE COLLEGE, THE HOUSE
COMMITTEE ON EDUCATION AND THE
WORKFORCE and TIM WALBERG,

                  Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF SARAH LAWRENCE COLLEGE'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

**HODGSON RUSS LLP**
*Attorneys for Sarah Lawrence College*
Joshua M. Agins
Molly F. Plewinski*
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...............................................2

    I.      PLAINTIFFS' SELF-DISCLOSED DISCIPLINARY HISTORIES....................2

    II.     THE HOUSE COMMITTEE'S INVESTIGATION OF CAMPUS
         ANTISEMITISM ....................................................................................................3

LEGAL STANDARDS ........................................................................................................5

    I.      DISMISSAL UNDER RULE 12(B)(1) ................................................................5

    II.     DISMISSAL UNDER RULE 12(B)(6) ................................................................5

ARGUMENT ......................................................................................................................6

    I.      PLAINTIFFS' FIRST AMENDMENT CLAIM AGAINST SLC FAILS FOR
         SEVERAL REASONS ..........................................................................................6

         A.     Plaintiffs Lack Standing on their First Amendment Claim ........................6

         B.     SLC is Not a State Actor .................................................................................12

         C.     There is No Plausible Allegation of Unlawful Viewpoint Discrimination
             by the College ...................................................................................................15

         D.     Money Damages Are Not Available on Plaintiffs' First Amendment
             Claim.................................................................................................................16

    II.     COUNT II SHOULD BE DISMISSED BECAUSE "VIEWPOINT
         DISCRIMINATION" IS NOT ACTIONABLE UNDER TITLE VI...................16

         A.     Viewpoint is Not Protected Under Title VI ...........................................17

         B.     Professor Gardinier's Claim is Barred by 42 U.S.C. § 2000d-3..............19

         C.     The Student Plaintiffs Fail Plausibly to Allege Intentional
             Discrimination ..................................................................................................20

             1.     Plaintiffs do not plausibly allege that the disciplinary proceedings
                 were discriminatory. .................................................................................20

i

**TABLE OF CONTENTS - Cont'd**

PAGE

2.      The College was not deliberately indifferent to severe, pervasive, and objectively offensive harassment of these Plaintiffs. ............... 24

3.      Plaintiffs' boilerplate reference to "retaliation" also fails to state a claim. ................................................................................... 28

III.    PLAINTIFFS' HUMAN RIGHTS LAW CLAIM ALSO FAILS ....................... 29

IV.     PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW BECAUSE THE COLLEGE'S ALLEGED "PROMISES" ARE NOT ACTIONABLE ................................................................................. 30

CONCLUSION .................................................................................................. 33

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Abordo v. Mobi PCS*,
   684 F. App'x 631 (9th Cir. 2017).......................................................................... 13

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988).................................................................................. 22

*Allen v. Wright*,
   468 U.S. 737 (1984) ............................................................................................... 7

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)................................................................................... 5

*Aoutif v. City Univ. of N.Y.*,
   2005 U.S. Dist. LEXIS 31827 (E.D.N.Y. Dec. 8, 2005).................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 5

*Badr v. N.Y. Inst. of Tech.*,
   2025 U.S. Dist. LEXIS 256055 (E.D.N.Y. Dec. 10, 2025)..................... 23, 28, 29

*Bailey v. N.Y. Law Sch.*,
   2021 U.S. App. LEXIS 34926 (2d Cir. Nov. 24, 2021)..................................20, 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................................. 16

*Bloomberg v. N.Y.C. Dep't of Educ.*,
   119 F.4th 209 (2d Cir. 2024)................................................................................ 19

*Bloomberg v. N.Y.C. Dep't of Educ.*,
   2025 U.S. Dist. LEXIS 37605 (S.D.N.Y. Mar. 3, 2025)..................................... 28

*Broidy Cap. Mgmt. LLC v. Benomar*,
   944 F.3d 436 (2d Cir. 2019)................................................................................... 5

*Budowich v. Pelosi*,
   610 F. Supp. 3d 1 (D.D.C. 2022) ........................................................................ 13

## TABLE OF AUTHORITIES - cont'd

PAGE

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ............................................................................................ 5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...........................................................................................7, 8, 10

*Consortium for Indep. Journalism, Inc. v. United States*,
    2025 U.S. Dist. LEXIS 55654 (S.D.N.Y. Mar. 26, 2025)....................................7, 16

*Cooper v. U.S. Postal Serv.*,
    577 F.3d 479 (2d Cir. 2009)......................................................................................... 12

*Daly v. Miller Place Union Free Sch. Dist.*,
    2025 U.S. Dist. LEXIS 252863 (E.D.N.Y. Dec. 3, 2025)......................................... 24

*Davis v. Monroe County Bd. of Educ.*,
    526 U.S. 629 (1999) .................................................................................................... 25

*Doe v. Syracuse Univ.*,
    2024 U.S. Dist. LEXIS 137790 (N.D.N.Y. Aug. 2, 2024)......................................... 31

*Egbert v. Boule*,
    596 U.S. 482 (2022) .................................................................................................... 16

*Estiverne v. Esernio-Jenssen*,
    910 F. Supp. 2d 434 (E.D.N.Y. 2012) ........................................................................ 13

*Evans v. Columbia Univ.*,
    2015 U.S. Dist. LEXIS 48768 (S.D.N.Y. Apr. 13, 2015) .......................................... 30

*Fakhreddine v. Univ. of Pa.*,
    2025 U.S. Dist. LEXIS 16373 (E.D. Pa. Jan. 30, 2025),
    *aff'd* 2026 U.S. App. LEXIS 561 (3d Cir. Jan. 9, 2026).......................................8, 10

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................................................. 6, 7

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) ............................................................... 30, 31, 32

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
    765 F. Supp. 3d 245 (S.D.N.Y. 2025) ........................................................................ 18

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) .................................................................................................. 1, 7

**TABLE OF AUTHORITIES - cont'd**

<u>PAGE</u>

*Guan N. v. N.Y.C. Dep't of Educ.*,
    2013 U.S. Dist. LEXIS 102988 (S.D.N.Y. July 23, 2013)...................................................... 13

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003).................................................................................................. 24

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    2012 U.S. Dist. LEXIS 141252 (S.D.N.Y. Sept. 27, 2012) ................................................21, 24

*Infant v. Massapequa Union Free Sch. Dist. (In re Parent)*,
    2026 U.S. Dist. LEXIS 1844 (E.D.N.Y. Jan. 5, 2026)........................................................ 29

*Johnson v. N.Y. Univ.*,
    800 F. App'x 18 (2d Cir. 2020)............................................................................................ 23

*Kestenbaum v. President & Fellows of Harvard Coll.*,
    743 F. Supp. 3d 297 (D. Mass. 2024).................................................................................. 18

*Khalil v. Trs. of Columbia Univ. in the City of New York*,
    2026 U.S. Dist. LEXIS 58267 (S.D.N.Y. Mar. 19, 2026)............................................. 10, 11, 14

*Khen v. US Coachways, Inc.*,
    2025 U.S. Dist. LEXIS 10575 (S.D.N.Y. Jan. 21, 2025) ......................................................12, 25

*Knelman v. Middlebury Coll.*,
    898 F. Supp. 2d 697 (D. Vt. 2012) ..................................................................................... 30

*Lax v. City Univ. of N.Y.*,
    2024 N.Y. Misc. LEXIS 2987 (Sup. Ct. Kings Co. June 28, 2024)......................................... 29

*Lopez v. Bay Shore Union Free Sch. Dist.*,
    668 F. Supp. 2d 406 (E.D.N.Y. 2009) ................................................................................. 22

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ............................................................................................................ 12

*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................................6, 10

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019) ...........................................................................................................12, 13

*Maron v. Legal Aid Soc'y*,
    605 F. Supp. 3d 547 (S.D.N.Y. 2022) ................................................................................. 18

**TABLE OF AUTHORITIES - cont'd**

PAGE

*Mason v. Cent. Suffolk Hosp.*,
    3 N.Y.3d 343 (2004)...................................................................................................... 32

*McGugan v. Aldana-Bernier*,
    752 F.3d 224 (2d Cir. 2014).......................................................................................... 13

*Minneci v. Pollard*,
    565 U.S. 118, 120 (2012)............................................................................................... 16

*Minto v. Molloy Coll.*,
    2019 U.S. Dist. LEXIS 165670 (E.D.N.Y. Sept. 26, 2019) .................................21, 22

*Murthy v. Missouri*,
    603 U.S. 43 (2024) .......................................................................................................... 6

*Nisa Muhammad v. Trs. of Columbia Univ.*,
    2025 U.S. Dist. LEXIS 193988 (S.D.N.Y. Sept. 30, 2025) .................................25, 27

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016) ..................................................................30, 31

*Posso v. Niagara Univ.*,
    518 F. Supp. 3d 688 (W.D.N.Y. 2021).................................................................30, 31

*Radwan v. Manuel*,
    55 F.4th 101 (2d Cir. 2022) ......................................................................................... 23

*Rodriguez v. N.Y. Univ.*,
    2006 U.S. Dist. LEXIS 97732 (S.D.N.Y. Nov. 17, 2006)........................................ 24

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017).................................................................... 30

*Roskin-Frazee v. Columbia Univ.*,
    474 F. Supp. 3d 618 (S.D.N.Y. 2019) ..................................................................... 20

*Salvador v. Touro Coll. & Univ. Sys.*,
    749 F. App'x 39 (2d Cir. 2018)................................................................................ 13

*Scaggs v. N.Y. State Dep't of Educ.*,
    2007 U.S. Dist. LEXIS 35860 (E.D.N.Y. May 16, 2007)........................................ 21

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998)....................................................................................... 13

**TABLE OF AUTHORITIES - cont'd**

PAGE

*Shipping Fin. Servs. Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998)..................................................................................... 5

*Siyu Yang v. Eastman Sch. of Music*,
2022 U.S. App. LEXIS 9340 (2d Cir. April 7, 2022) .............................................. 13

*Tedeschi v. Wagner Coll.*,
49 N.Y.2d 652 (1980)..........................................................................................32, 33

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ...............................................................................................6, 10

*Tsanganea v. City Univ. of N.Y.*,
2008 U.S. Dist. LEXIS 66236 (S.D.N.Y. Aug. 28, 2008)....................................... 18

*Vengalattore v. Cornell Univ.*,
36 F.4th 87 (2d Cir. 2022) ...................................................................................... 22

*Ward v. New York Univ.*,
2000 U.S. Dist. LEXIS 14067 (S.D.N.Y. Sept. 25, 2000) ...................................30, 31

*Wetzel v. Town of Orangetown*,
2015 U.S. Dist. LEXIS 21355 (S.D.N.Y. Feb. 9, 2015) ......................................... 29

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ................................................................................................ 7

*Yourman v. Columbia Univ.*,
2026 U.S. Dist. LEXIS 34989 (S.D.N.Y. Feb. 20, 2026) ....................................... 21

*Yu v. Vassar Coll.*,
97 F. Supp. 3d 448 (S.D.N.Y. 2015) ...................................................................... 32

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) ..................................................................................20, 21

*Zeno v. Pine Plains Cent. Sch. Dist.*,
702 F.3d 655 (2d Cir. 2012)..............................................................................20, 24, 25

**Constitutional Provisions**

U.S. Const. art. III...........................................................................................*passim*

U.S. Const. amend. I ......................................................................................*passim*

**TABLE OF AUTHORITIES - cont'd**

PAGE

**Statutes**

42 U.S.C. § 2000d.................................................................................................................*passim*

N.Y. Exec. L. § 296 ................................................................................................................ 29


**Rules**

Fed. R. Civ. P 12(b)(1) .............................................................................................................. 5

Fed. R. Civ. P 12(b)(6) .............................................................................................................. 5

## PRELIMINARY STATEMENT

The express purpose of this lawsuit is to challenge the alleged "suppression of disfavored speech" arising from a disagreement over the definitions of "antisemitism" and "antizionism." But even if Plaintiffs have legitimate concerns about the motivations of certain members of Congress or the alleged lack of a "valid legislative purpose" for the House Committee's "antisemitism inquiry," the claims against Sarah Lawrence College, a private institution, are the wrong tool to wage that battle. Try as they might to shoehorn an alleged viewpoint discrimination claim into a viable theory against a private entity to which the First Amendment does not apply, each Count in the Amended Complaint ("AC") against Sarah Lawrence fails for multiple independent reasons.

As for the First Amendment claim, Plaintiffs lack standing due to the absence of any injury in fact. Plaintiffs say this action is designed to prevent the "release [of] the identities of students involved in pro-Palestine organizing," AC, ¶ 194, but the Amended Complaint (like the original Complaint) is self-defeating because it discloses Plaintiffs' legal names, disciplinary histories, and the fact that each Plaintiff is "heavily involved in pro-Palestine organizing on campus." *Id.*, ¶¶ 162, 165, 169, 171, 173, 176, 183, 187, 189, 193, 195. In other words, Plaintiffs have no plausible claim of injury in fact because *they* already released the information that they allegedly seek to protect. But even if standing exists, Plaintiffs fail to state a claim against Sarah Lawrence because the College was not transformed into a state actor through its "voluntary compliance" (*id.*, ¶ 16) with certain of the Committee's requests, especially where it complied with FERPA by redacting all student names and identifying information. Silver Decl., ¶¶ 8-9. Moreover, FERPA provides no private right of action, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002), and Plaintiffs' FERPA-related allegations do not fulfill any element of their First Amendment cause of action. For these reasons, the First Amendment claim should be dismissed.

1

Irrespective of the First Amendment claim's viability (or lack thereof), Plaintiffs cannot repackage their self-described "viewpoint discrimination" theory as one for violation of Title VI, the New York Human Rights Law, or any "contract." Title VI prohibits discrimination on the basis of race, color, or national origin—not viewpoint. The New York State Human Rights Law does not protect viewpoint either. And what binds this diverse group of eleven Plaintiffs is indeed their viewpoint—one that is critical of Israel, supportive of the Palestinian people, and defines "antisemitism" more narrowly than certain members of Congress. Neither Title VI nor the Human Rights Law applies to this political and definitional dispute over Plaintiffs' expression or the Committee's inquiry. Likewise, Plaintiffs cannot transform their "viewpoint discrimination" theory into one for breach of contract through generic references to College policies. The Amended Complaint fails to identify any "contract" provision that could be construed to give Plaintiffs the rights they claim were violated.

For these reasons and many others described below, Plaintiffs fail to state a claim against the College, and the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Sarah Lawrence College ("SLC" or the "College") is a private college in Bronxville, New York. AC, ¶ 20. Plaintiff Suzanne Gardinier is a tenured SLC faculty member. The other ten Plaintiffs are current or recently graduated SLC students. *Id*., ¶¶ 19-20.

### I.    PLAINTIFFS' SELF-DISCLOSED DISCIPLINARY HISTORIES

Plaintiffs center this lawsuit on their desire to prevent the "release [of] the identities of students involved in pro-Palestine organizing," AC, ¶ 194, but Plaintiffs filed this lawsuit using their legal names and disclosed that each Plaintiff has been "heavily involved in pro-Palestine organizing on campus." *Id.*, ¶¶ 162, 165, 169, 171, 173, 176, 183, 187, 189, 193, 195.

Plaintiffs allege that, in November 2024, nine of them took part in the "occupation" of SLC's main administrative building, "Westlands." AC, ¶ 162 (Abdulhaqq), ¶ 165 (Aickin), ¶ 169 (Atalla), ¶ 173 (Cheema), ¶ 183 (Gullette), ¶ 187 (Mbugua), ¶ 189 (Montague), ¶ 193 (Richardson), ¶ 195 (Tucker-Kellogg). Within weeks, in December 2024, six Plaintiffs were charged with violating SLC conduct policies for certain acts that occurred during the Westlands occupation. *Id.*, ¶ 173 (Cheema), ¶ 186 (Gullette), ¶ 187 (Mbugua), ¶ 189 (Montague), ¶ 193 (Richardson), ¶ 195 (Tucker-Kellogg). The AC does not describe what, if any, sanctions resulted, except in the case of Montague, who "was found responsible for all but one of the charges and placed on disciplinary probation for one semester." *Id.*, ¶ 189.

Although the rest of the student Plaintiffs—Abdulhaqq, Aickin, Atalla, and Carlisle—engaged in related protest activities, they are not alleged to have been charged with conduct violations or disciplined. *Id.*, ¶¶ 162, 169-172. Likewise, Plaintiff Gardinier is not alleged to have been disciplined for her "pro-Palestine activism."

## II.    THE HOUSE COMMITTEE'S INVESTIGATION OF CAMPUS ANTISEMITISM

On March 27, 2025, the House Committee on Education and the Workforce issued a letter addressed to the College's President and Chair of its Board of Trustees, expressing the Committee's "significant concerns regarding antisemitism on [SLC's] campus[.]" AC, ¶ 24; Ex. A. The Committee asked SLC to "please produce" four categories of documents, including "documents related to disciplinary action taken against students or faculty involved in the November 2024 takeover and occupation of Westlands and the accompanying encampment[.]" Ex. A at 3-4.

The House Committee sent a second letter on June 11, 2025, in which the Committee reiterated its prior document requests and sought three additional categories of documents. AC,

3

¶ 32; Ex. B.  In its June 11th Letter, the Committee expressed concern that faculty members had contributed to a hostile environment for Jewish students and identified Plaintiff Gardinier by name as someone who "applauded the October 7th attack on Israel and denied that Hamas committed mass rape against Israeli women." Ex. B at 3. The Committee knew of Professor Gardinier from her publicly available social media posts. *Id*.

SLC promptly engaged outside counsel to represent it in connection with the Committee and produced certain requested documents, while redacting the names (and any other personally identifiable information) of *all* students, consistent with the Family Educational Rights and Privacy Act, 20 U.S.C. ¶ 1232f, 34 CFR Part 99 ("FERPA"). Silver Decl., ¶¶ 4-9. Plaintiffs acknowledge that "[b]oth Defendants have asserted that all documents pertaining to Plaintiff students were redacted in compliance with FERPA before being disclosed by the College to the Committee." AC, ¶ 84. The College did not produce student disciplinary records, the Committee did not issue a subpoena for such records, AC, ¶ 16, and the Committee "do[es] not have any more pending or future requests for documents from [the] College." Dkt. 32, ¶ 14.

On March 17, 2026, following its year-long investigation, the Committee issued a report entitled, "How Campuses Became Hotbeds: The Rise of Radical Antisemitism on College Campuses" (the "Committee Report"). AC, ¶ 68; Ex. C. The Committee Report focused on alleged antisemitism at twelve institutions, including Sarah Lawrence. Plaintiffs do not allege that the Committee Report disclosed their names or any other information from which they could be identified, AC, ¶¶ 70-72, and the document itself confirms that Plaintiffs are not the Committee Report's focus. Ex. C. Contrary to Plaintiffs' contention that the College has been antagonistic toward them, the Committee Report actually highlights that SLC gave a Student Leadership Award to its chapter of Students for Justice in Palestine (Ex. C at 24-25)—a student organization in which

4

some of the Plaintiffs self-identify as members, and an award for which Plaintiff Gardinier had nominated the student group. AC, ¶¶ 165, 171.

## LEGAL STANDARDS

### I.    DISMISSAL UNDER RULE 12(B)(1)

To survive Rule 12(b)(1), a plaintiff "must allege facts that affirmatively and plausibly suggest . . . standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The court does not "draw[] from the pleadings inferences favorable to the party asserting [standing]." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). On a Rule 12(b)(1) motion, the Court may rely on evidence outside the pleadings. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019). Defendants are "permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading[,]" and in opposition, Plaintiffs must "come forward with evidence of their own to controvert that presented by the defendant[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

### II.    DISMISSAL UNDER RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 556. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

5

**ARGUMENT**

**I.     PLAINTIFFS' FIRST AMENDMENT CLAIM AGAINST SLC FAILS FOR SEVERAL REASONS**

In Count I, Plaintiffs allege "[t]he Committee's demand that the College relinquish to it individual student records violates the First Amendment." AC, p. 49. Two threshold issues bar this claim. First, Plaintiffs fail plausibly to allege injury in fact necessary to confer Article III standing. Second, Plaintiffs fail plausibly to allege SLC is a state actor against which a First Amendment claim could be asserted. For these and other reasons discussed below, the First Amendment claim should be dismissed.

**A.     Plaintiffs Lack Standing on their First Amendment Claim**

"Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action. For example, a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "Nor may citizens sue merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to government action." *Id.*

To establish Article III standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020); *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs "bear the burden of establishing" each element of standing. *Lujan*, 504 U.S. at 561. Importantly, "standing is not dispensed in gross" but must be established for "each claim that [plaintiffs] press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024).

"The injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" *All. for Hippocratic Med.*, 602 U.S. at 382, *quoting Allen v. Wright*, 468 U.S. 737, 756 (1984). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), *quoting Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Plaintiffs miss the mark by focusing on the College's *past* document productions and the question of whether the College redacted pursuant to FERPA. Indeed, alleged "past injury . . . cannot be redressed by prospective equitable relief in the form of an injunction" and "does not suffice for Article III standing unless the plaintiff can demonstrate that it is likely to be harmed again in the future in a similar way." *Consortium for Indep. Journalism, Inc. v. United States*, 2025 U.S. Dist. LEXIS 55654, *24 (S.D.N.Y. Mar. 26, 2025). And, as noted above, the College appropriately redacted all documents, and no private cause of action exists for an alleged violation of FERPA. *Gonzaga University*, 536 U.S. at 287.

As for prospective injury, Plaintiffs' theory rests on the following "speculative chain of possibilities" (*Clapper*, 568 U.S. at 414): First, SLC will later release unredacted disciplinary records; second, the Committee will release those records to the public; and third, unidentified members of the public will "dox" and "harass" Plaintiffs because of those records. Notably, only six Plaintiffs are alleged to have been disciplined; the other five thus have no disciplinary records. This speculative chain of possibilities is insufficient and contrary to the undisputed facts.

First, Plaintiffs speculate that SLC will disclose their unredacted disciplinary records. However, the College has not produced disciplinary files or any student names or identifying information, Silver Decl., ¶ 7, and the Committee has no "pending or future requests for

7

documents" for the College. Dkt. 32, ¶ 14. The AC is devoid of factual allegations that would lend plausibility to Plaintiffs' speculation. *Fakhreddine v. Univ. of Pa.*, 2025 U.S. Dist. LEXIS 16373, *9 (E.D. Pa. Jan. 30, 2025), *aff'd* 2026 U.S. App. LEXIS 561 (3d Cir. Jan. 9, 2026). ("Plaintiffs allege Penn produced documents to the Committee as early as February 27, 2024, yet they do not allege such disclosures contributed to or exacerbated their harassment by third parties. Instead, Plaintiffs continue only to allege that compliance 'would [sic] inevitably lead to increased harassment, hate, causing [sic] Dr. Fakhreddine and her family to fear for her safety.' Such conclusory allegations, without more, is insufficient.") (internal citations and quotations omitted).

Second, Plaintiffs speculate that the Committee might, if received, disclose unredacted records to the public. This pure speculation is belied by the Committee's recent release of its Report, which preserved all redactions of student names. Ex. C; Silver Decl., ¶¶ 9-10. Now that the Committee has issued its Report and has no "pending or future requests" for SLC (Dkt. 32, ¶ 14), there is no basis to assume future disclosure.

Third, Plaintiffs presume the disclosure of their records would result in "doxing and harassment" by unidentified third parties, but the Supreme Court has consistently expressed a "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414. Such reluctance should bar Plaintiffs' injury in fact theory.

The third chain in Plaintiffs' speculative theory fails for the additional reason that the AC fails plausibly (or even coherently) to explain how the disclosure of Plaintiffs' disciplinary records would materially alter what is already in the public domain. Plaintiffs *self-disclosed* their full legal

names, affiliations, and conduct history (to the extent they have any). Dkt. 1, ¶¶ 87-120; AC,

¶¶ 162-195.[1] This self-disclosure is fatal, as demonstrated by the following illogical allegation:

> Plaintiff Lincoln Richardson *is actively involved in pro-Palestinian organizing* at Sarah Lawrence College . . . Should the College release *the identities of students involved in pro-Palestine organizing*, these kinds of unjust, discriminatory, and threatening instances of bias are likely to increase.

AC, ¶¶ 193-94 (emphasis added).

Moreover, many (if not all) of the Plaintiffs were in the public light even before

commencing this lawsuit. For example:

- Nurah Abdulhaqq already "has an avid online presence" that "makes her not only an easy target but an identifiable one." AC, ¶ 163.

- Vega Gullette is identified in a New York Post article that explains she "was charged with attempted assault in the second degree and obstructing government administration" during an "anti-ICE protest" in Manhattan. Ex. D.[2]

- Liam Montague has been the subject of articles in the New York Post and Jewish News Syndicate "for his involvement in a pro-Palestine protest in New York City." AC, ¶ 190. One article explains that Montague was "charged with obstruction of governmental administration, disorderly conduct for obstructing traffic and failure to obey a police officer" stemming from a protest that blocked traffic at the Brooklyn Bridge, Holland Tunnel, and the Midtown Tunnel. Ex. E.[3]

- Suzanne Gardinier is the subject of an article characterizing her as a "'known antisemite…because of her social media posts[.]" AC, ¶ 178.[4]

---

[1] Notably, the Complaint was picked up by numerous reporting services and is publicly available independent of the Court's PACER website. *See, e.g.*, https://clearinghouse.net/case/47450/; https://clearinghouse-umich-production.s3.amazonaws.com/media/doc/168595.pdf (last accessed April 20, 2026).

[2] https://nypost.com/2025/06/11/us-news/college-students-agitators-and-a-hamptons-brat-among-86-arrested-at-rowdy-nyc-anti-ice-protest/ (last accessed April 20, 2026).

[3] https://www.jns.org/israel-news/15-people-arrested-after-anti-israel-activists-block-brooklyn-bridge (last accessed April 20, 2026).

[4] Plaintiff Gardinier is not alleged to have been disciplined by the College and thus there are no disciplinary records that could be disclosed with respect to her. *See* AC, ¶ 182.

Thus, the hypothetical disclosure of records showing that certain Plaintiffs were disciplined in connection with their participation in the Westlands occupation—a fact that the AC itself discloses—could not plausibly cause "*certainly impending*" injury in fact. *Clapper*, 568 U.S. at 409; *Thole*, 590 U.S. at 540; *Lujan*, 504 U.S. at 560-61.

On an analogous record, the court in *Fakhreddine v. Univ. of Pa.* dismissed identical claims for lack of standing, and the Third Circuit affirmed. 2025 U.S. Dist. LEXIS 16373, *9 (E.D. Pa. Jan. 30, 2025), *aff'd* 2026 U.S. App. LEXIS 561 (3d Cir. Jan. 9, 2026). The plaintiffs "fail[ed] adequately to allege any injury rising above speculative harm" because:

> Plaintiffs' claims rely on the following chain of possibilities: (1) if Penn sends unredacted documents containing personal identifiable information to the Committee; (2) if the Committee publishes that unredacted information to the public; (3) if unknown and unnamed third parties obtain that information; then (4) those third parties may use the information to harass Plaintiffs. This is not enough to make out standing.

2025 Dist. LEXIS 16373, *8. The *Univ. of Pa.,* decision comprehensively examines and applies well-established precedent and the same outcome should be reached here.

Judge Subramanian's recent decision in *Khalil v. Trs. of Columbia Univ. in the City of N.Y.,* is inapposite because the facts presented were fundamentally different, and extreme. 2026 U.S. Dist. LEXIS 58267 (S.D.N.Y. Mar. 19, 2026). In *Columbia Univ.*, four of the eight plaintiffs had standing to assert First Amendment claims relating to Columbia's response to letters from the House Committee based on four key factors that do not exist here.

First, Columbia was under immense pressure because the government announced it would "conduct a comprehensive review of more than $5 billion in federal grant commitments to Columbia University to ensure the university is in compliance with federal regulations, including its civil rights responsibilities" and, days later, "'cancelled or paused' approximately $400 million in federal grants to Columbia, citing its 'failure to protect Jewish students from antisemitic

10

harassment.'" 2026 U.S. Dist. LEXIS 58267, \*5.[5] Columbia's response to the House Committee's document requests occurred within that context. *Id.* There are no allegations of overt financial pressure in the case of SLC.

Second, the Columbia plaintiffs' allegation that their records "will be disclosed" was deemed plausible because Columbia agreed to produce "existing . . . case files for each of the eleven events" and lifted some of the original redactions that had been placed on the records. *Id.*, \*23-24. In contrast, SLC has not produced disciplinary files or student names, Silver Decl., ¶¶ 7-10, and the Committee has no "pending or future requests" for the College. Dkt. 32 at ¶ 14.

Third, unlike SLC, Columbia had a "practice of disclosing students' disciplinary records to the Committee[.]" 2026 U.S. Dist. LEXIS 58267, \*28. Specifically, during the initial phase of the Committee's inquiry, Columbia produced student records that the Committee allegedly leaked to the press. The pleading alleged: "When the University previously complied with the Committee's requests, student records were leaked to the press, 79 students' identities were not properly safeguarded . . . and members of Congress or their staffers posted students' private information on social media sites and identified students and faculty on the public record . . . all of which led to widespread and reputational harm, as well as increased incidents of doxing and harassment." 2026 U.S. Dist. LEXIS 58267, \*26. Here, there is no allegation that SLC previously—or ever—produced unredacted student records to the Committee, much less that it had a "practice" of doing so.

---

[5] This alleged pressure came from federal agencies that were also named defendants in *Khalil*. The additional involvement of these federal agencies is a critical distinction because those agencies, *not* the Congress, preside over the process to withdraw federal funding for non-compliance with Title VI. *See* 42 U.S.C. § 2000d.

Fourth, seven of the eight Columbia plaintiffs used pseudonyms in their legal filings. Thus, they did not self-disclose the very information they were trying to protect, in contrast to Plaintiffs here. Plaintiffs' self-disclosure of their own identities and backgrounds further erodes the plausibility of their speculation that public disclosure of unidentified records would cause harm any more so than the information they already made public.

For these compelling reasons, the allegations here are fundamentally different than in *Columbia Univ.*, but are on all fours with *Univ. of Pa.* Plaintiffs fail plausibly to allege standing for their First Amendment claim, requiring dismissal of Count I.

### B.    SLC is Not a State Actor

Even if standing exists, Plaintiffs fail to state a First Amendment claim against SLC.

The First Amendment "prohibits only governmental abridgement of speech"; it "does not prohibit private abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). This presents a "fundamental" and "threshold problem" for Plaintiffs, *id*. at 809, because SLC is a private college, AC, ¶ 20, and is not subject to First Amendment claims absent state action. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009).

The state action doctrine "protects a robust sphere of individual liberty" by "enforcing that constitutional boundary between the governmental and the private[.]" *Manhattan Cmty. Access Corp*, 587 U.S. at 809. "Careful adherence" to the state action requirement is needed to "preserve[] an area of individual freedom by limiting the reach of federal law and federal judicial power[,]" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982), and it is Plaintiffs' burden to plausibly allege facts establishing state action. *See, e.g.*, *Khen v. US Coachways, Inc.*, 2025 U.S. Dist. LEXIS 10575, *21 (S.D.N.Y. Jan. 21, 2025) ("Plaintiffs have not pleaded facts showing that [defendant] was a state actor").

12

Generally speaking, private colleges are not state actors. *Siyu Yang v. Eastman Sch. of Music*, 2022 U.S. App. LEXIS 9340, \*3-4 (2d Cir. Apr. 7, 2022) (summary order); *Salvador v. Touro Coll. & Univ. Sys.*, 749 F. App'x 39 (2d Cir. 2018). But "a private entity can qualify as a state actor in a few limited circumstances—including, for example, . . . when the government compels the private entity to take a particular action" or "when the government acts jointly with the private entity[.]" *Manhattan Cmty. Access Corp.*, 587 U.S. at 809. These tests—referred to as the "compulsion" or coercion test and the "joint action" or "close nexus test," *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014)—are not plausibly alleged here.[6]

Whether analyzed under the "coercion test" or the "close nexus test," the AC fails for a straightforward reason: "[m]ere cooperation with a state official or investigatory agency is insufficient to establish state action." *Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012), *quoting Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *Guan N. v. N.Y.C. Dep't of Educ.*, 2013 U.S. Dist. LEXIS 102988, \*13 n.8 (S.D.N.Y. July 23, 2013) ("The mere furnishing of information to government officials is insufficient to demonstrate joint action"); *see also Budowich v. Pelosi*, 610 F. Supp. 3d 1, 19 (D.D.C. 2022) ("JPMorgan did not engage in state action when it complied with the congressional subpoena."); *Abordo v. Mobi PCS*, 684 F. App'x 631, 632 (9th Cir. 2017) (rejecting argument that defendants "act[ed] under the color of state law in responding to subpoenas" issued by the state).

Nothing more is alleged here. The claims arise from the College's "voluntary compliance" and choice "to comply with the Committee's requests[.]" AC, ¶¶ 138-39. In *Fakhreddine*, the court

---

[6] A third test, the "public function test," plainly is not implicated, as it requires the private entity to "exercise[] powers traditionally exclusively reserved to the State." *Manhattan Cmty. Access Corp.,* 587 U.S. at 809 (cleaned up).

pointed to similar allegations as the basis for its conclusion that coercion—and thus state action—were absent. *See Fakhreddine*, 2025 U.S. Dist. LEXIS 16373, *12 (rejecting coercion theory because plaintiffs alleged "Penn is voluntarily complying").

*Khalil v. Columbia University* does not depart from the foregoing authority. Unlike here, the federal government threatened Columbia with the revocation of billions of dollars in funding and "'canceled or paused' approximately $400 million in federal grants[.]" 2026 U.S. Dist. LEXIS 58267, *5. In that context, the government pressured Columbia to adopt a specific definition of "antisemitism" and to discipline the plaintiffs based on that definition. *Id.*, *5-6, 19. Judge Subramanian focused on the allegation of *coerced punishment* of the plaintiffs, explaining:

> Plaintiffs allege more than the 'mere furnishing of information to government officials,' 'mere compliance' with a subpoena, or 'mere cooperation' with an 'arms-length' government investigation. They allege not only that Columbia will comply with the Committee's demand [for documents], but that it is being significantly encouraged or coerced **into punishing them for protected speech**. In other words, coercion to violate a third party's constitutional rights doesn't equal 'mere compliance'; it's state action."

2026 U.S. Dist. LEXIS 58267, *37 (emphasis supplied).

Plaintiffs do not—and cannot—plausibly allege that the Committee coerced SLC to punish them for their roles in the Westlands occupation. In fact, even though every single Plaintiff was involved to some extent in "pro-Palestinian organizing," only *some* Plaintiffs were charged with conduct violations, and those charges were issued and adjudicated many months before the College received the House Committee's letters. *Compare* AC, ¶ 195 ("In January 2024, Nora Tucker-Kellogg was charged by the College with student code of conduct violations"), *with* ¶¶ 24 and 32

14

(the Letters were sent to the College on March 27, 2025 and June 11, 2025).[7] The Committee's Letters could not have coerced the College to bring conduct charges that had been brought and adjudicated *months before*. Further, the hallmarks of overt coercion that existed in *Columbia Univ.* are non-existent here—no "canceling" of millions of dollars in funding, no threat to revoke billions of dollars in funding, and no capitulation by SLC to produce unredacted documents or disciplinary files. Plaintiffs' effort to copy/paste themes from *Columbia Univ.* fails.

In sum, SLC was not transformed into a state actor when it *declined* the Committee's request for unredacted student disciplinary records but instead produced other redacted records. The First Amendment claim as against SLC should be dismissed.

### C.     There is No Plausible Allegation of Unlawful Viewpoint Discrimination by the College

Even if Plaintiffs could overcome the significant threshold deficiencies including the lack of standing and state action, they still fail to state a claim for First Amendment viewpoint discrimination because the AC lacks factual allegations plausibly connecting any adverse action by the College to Plaintiffs' viewpoint. As discussed in Point II.A, p. 18, *infra*, only five of the eleven Plaintiffs allege they were disciplined. AC, ¶¶ 173, 187, 189, 193, 195. But they do not allege facts suggesting that this discipline stemmed from their viewpoint, such as comparators or statements showing the College disapproved of the content of their speech (rather than their conduct). Further, as noted, the disciplinary charges occurred *before* the Committee sent its first letter to the College, so any "state action" arising from the Committee's Letters had no causal nexus to the alleged adverse action. For these reasons, Plaintiffs fail to state a claim for viewpoint

---

[7] The AC contains an apparent typographical error; certain of the Plaintiffs were advised on January 15, <u>2025</u> (not 2024), that they had been found responsible for conduct violations relating to the November <u>2024</u> events. *See* AC, ¶ 195.

discrimination under the First Amendment. *See, e.g.*, *Consortium for Indep. Journalism, Inc.*, 2025 U.S. Dist. LEXIS 55654, *40-42 (no plausible allegations of viewpoint discrimination).

### D. Money Damages Are Not Available on Plaintiffs' First Amendment Claim

No damages claim is available for three reasons. First, Plaintiffs do not assert a claim for damages under 42 U.S.C. § 1983. Second, to the extent money damages are available for constitutional violations through a *Bivens* claim, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court has declined to extend *Bivens* to the First Amendment. *Egbert v. Boule*, 596 U.S. 482, 491 (2022); *see also Consortium for Indep. Journalism, Inc.*, 2025 U.S. Dist. LEXIS 55654, *22 ("There is no *Bivens* remedy for Plaintiff's First Amendment claim"). Third, the Supreme Court has rejected efforts to assert *Bivens* claims against private actors, even when they act under color of federal law. *Minneci v. Pollard*, 565 U.S. 118, 120, 126-27 (2012). These numerous obstacles likely explain why Count I itself does not seek money damages, but to the extent any ambiguity exists, any money damages claim under Count I should be dismissed.

## II. COUNT II SHOULD BE DISMISSED BECAUSE "VIEWPOINT DISCRIMINATION" IS NOT ACTIONABLE UNDER TITLE VI

Count II contains a scattershot of buzzwords that pay lip service to the theories of liability that may arise under Title VI—such as "policy and practice" and "deliberate indifference"—but Plaintiffs fail to state a claim under Title VI for three independent reasons. First, Title VI does not permit claims for viewpoint discrimination. Second, Plaintiffs fail to plead factual allegations permitting an inference of discriminatory animus. Third, Plaintiffs fail to plead deliberate indifference for a host of reasons, including that they do not plausibly allege severe and pervasive harassment of which the College had notice. At bottom, Plaintiffs' attempt to repackage their First

16

Amendment claim as Title VI discrimination is nothing more than trying to fit a square peg into a round hole and should be rejected.

### A.      Viewpoint is Not Protected Under Title VI

Under Title VI, no person in the United States "shall, o*n the ground of race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis added). By its plain language, Title VI prohibits discrimination only "on the ground of" those three enumerated protected classes. *Id.*

The gravamen of the AC is unmistakably focused on alleged "viewpoint discrimination." AC, ¶ 115 (alleging discrimination because of Plaintiffs' "protected expressions, through the use of disproportionate student conduct sanctions singling out pro-Palestinian expression"); ¶ 116 ("anyone expressing criticism of Israel or support of Palestine is execrated as an antisemite and supporter of terrorism"); ¶ 119 ("freedom of association has been infringed"); ¶ 125 (alleging "viewpoint discrimination"); 126 (the "protected class" is defined by "a particular viewpoint"); ¶ 127 (same); ¶ 139 (the protected class engaged in "pro-Palestine expression and criticism of Israel"); ¶ 151 (alleging violation of Title VI based on "the punishment of First Amendment-protected pro-Palestinian speech"); ¶ 174 ("[s]tudents across the country [are] engaging in free speech on behalf of Palestine"); ¶ 182 (alleging harassment "based solely on Professor Gardinier's political views and expressions"); ¶ 184 (Plaintiffs are "pro-Palestine student activists"); 186 (Plaintiffs are "advocating for Palestinian liberation"); ¶ 193 (alleging discipline based on "political expression"); ¶ 222 (alleging the College privileged "Jewish people who assert that Zionism is a cornerstone of their religious beliefs").

The fact that Plaintiffs expressly and repeatedly characterize their claim as one for "viewpoint discrimination" is fatal for the simple reason that "viewpoint discrimination . . . is not actionable under Title VI." *Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 310 (D. Mass. 2024); *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 262 (S.D.N.Y. 2025) (Title VI prohibits discrimination on the basis of "personal characteristics" not viewpoint); *see also Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 558 (S.D.N.Y. 2022) ("one's stance on a political or social issue is not a protected characteristic under Title VII"); *Tsanganea v. City Univ. of N.Y.*, 2008 U.S. Dist. LEXIS 66236, *3 n.4 (S.D.N.Y. Aug. 28, 2008) (same).

The varied makeup of the Plaintiff group confirms that their "viewpoint discrimination" claim cannot plausibly be framed as one based on race, color, or national origin. To be sure, some Plaintiffs describe themselves as "Muslim" or "Palestinian," *see* AC, ¶ 162 (Abdulhaqq), ¶ 169 (Atalla), ¶ 173 (Cheema), ¶ 183 (Gullette), ¶ 189 (Montague). But the remaining Plaintiffs merely claim to be "supporter[s] of Palestinian and Muslim students." AC, ¶ 165 (Aickin), ¶ 171 (Carlisle), ¶ 175 (Gardinier), ¶ 187 (Mbugua), ¶ 193 (Richardson), ¶ 195 (Tucker-Kellogg). And by "supporter," they mean they have engaged in expressive conduct that is "pro-Palestinian" and/or "anti-Zionist," or otherwise critical of Israel. In fact, Plaintiffs observe that "[m]any American Jews, including members of the College community, are horrified by Israeli violence, and regard themselves as anti-Zionist and as supporters of the Palestinian people." AC, ¶ 95. In other words, what binds this otherwise disparate group of individuals is not their race, color, or national origin, but their viewpoint. That overbroad theory is incompatible with the text of Title VI. On this basis alone, Count II should be dismissed.

**B.      Professor Gardinier's Claim is Barred by 42 U.S.C. § 2000d-3**

Professor Gardinier's claim fails for an additional reason. "An important limitation appears in Section 604, which bars a Title VI claim 'with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment.'" *Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 210 (2d Cir. 2024), *quoting* 42 U.S.C. § 2000d-3. Section 604 "shield[s] *employers* from double liability under both Title VI and Title VII for the same conduct." *Id.* at 216 (emphasis original). Because Title VI is not an employment discrimination statute like Title VII, it cannot be used to secure compliance with respect to employment practices. *Id.* Individuals "opposing unlawful workplace discrimination must bring suit under Title VII, not Title VI." *Id.*

Professor Gardinier is an employee of the College. AC, at ¶ 175. Plaintiffs collectively allege the "College receives federal financial assistance," *id.*, ¶ 216, but they plainly do not allege that "a primary objective" of SLC's federal funding "is to provide employment" (42 U.S.C. § 2000d-3). Gardinier's claim therefore fails because she has challenged an "employment practice." *See* 42 U.S.C. § 2000d-3; *Bloomberg*, 119 F.4th at 215 ("Section 604 bars Title VI claims challenging 'employment practice[s]' unless 'a primary objective of the Federal financial assistance is to provide employment.'") (quoting 42 U.S.C. § 2000d-3).[8] Professor Gardinier's Title VI claim must be dismissed on this basis.

---

[8] An "employment practice" is "employment discrimination," "opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination." *Bloomberg*, 119 F.4th at 215-216. Professor Gardinier alleges the College discriminated against her when it failed to respond to her report that another tenured professor defamed her by calling her a "known antisemite." AC, ¶ 178. She further alleges the College treats "pro-Israel" employees more favorably than "pro-Palestine" employees. *Id.* These claims directly challenge a purported "employment practice" and are barred by Section 604.

19

### C.    The Student Plaintiffs Fail Plausibly to Allege Intentional Discrimination

Plaintiffs' conclusory invocation of phrases like "policy and practice," "deliberate indifference," and "retaliation," does not support a Title VI claim. Plaintiffs use these buzzwords in an effort to breathe life into their nonviable First Amendment claim—essentially, to establish First Amendment rights on a private campus by shoehorning their claim into Title VI. But the Title VI allegations are wholly conclusory and fail to state a claim under any available theory.

#### 1.    Plaintiffs do not plausibly allege that the disciplinary proceedings were discriminatory.

"Title VI prohibits [only] intentional violations of the statute." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012). Thus, "a plaintiff must allege that the defendant discriminated against him on the basis of [a protected characteristic], that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Bailey v. N.Y. Law Sch.*, 2021 U.S. App. LEXIS 34926, *9 (2d Cir. Nov. 24, 2021) (quotation omitted). "[T]o survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [] discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *accord Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 623 (S.D.N.Y. 2019) (analyzing Title IX).[9]

Discriminatory intent may be inferred from "remarks that could be viewed as reflecting discriminatory animus or through facts establishing that students outside of plaintiff's protected class were given preferential treatment[.]" *Minto v. Molloy Coll.*, 2019 U.S. Dist. LEXIS 165670,

---

[9] "Historically, the Supreme Court has applied parallel analyses to claims brought under Title IX and Title VI." *Zeno*, 702 F.3d at 665 n.9.

*23-24 (E.D.N.Y. Sept. 26, 2019) (quotation omitted); *HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 U.S. Dist. LEXIS 141252, *42 (S.D.N.Y. Sept. 27, 2012) ("Typically, facts that support an inference of racial animus relate to long-term practices of discrimination, or to comments made by individuals suggesting that they harbor racial bias.") (quotation omitted); *see also Yourman v. Columbia Univ.*, 2026 U.S. Dist. LEXIS 34989, *4-5 (S.D.N.Y. Feb. 20, 2026) (intentional discrimination may arise from a "policy or practice of [the] institution").

The only "specifically alleged" adverse action <u>by the College</u> that is identified in Count II is the discipline taken against *certain* (but not all) Plaintiffs.  *See* AC, ¶ 217 (alleging the College's "discriminatory course of conduct" centered on "subjecting Plaintiffs to draconian, opaque, and illegitimate disciplinary procedures").[10] Five of the eleven Plaintiffs—namely, Cheema, Mbugua, Montague, Richardson, and Tucker-Kellogg—allege they were disciplined. AC, ¶¶ 173, 187, 189, 193, 195. And as to these five Plaintiffs, the allegedly "discriminatory" discipline does not give rise to a claim for at least three reasons.

First, the AC contains no facts from which the Court could plausibly infer the College disciplined those five Plaintiffs *because of* their race, color, or national origin. Some Plaintiffs identify as "Muslim" and "Palestinian," and some do not. Some Plaintiffs were disciplined, and some were not. Plaintiffs' "bare and conflicting allegations, without any facts in support" are "insufficient to state a claim for intentional discrimination" under Title VI. *Scaggs v. N.Y.  State Dep't of Educ.*,  2007 U.S. Dist. LEXIS 35860, *41-42 (E.D.N.Y. May 16, 2007) ("the complaint belie[d] the notion that minority and non-minority children were treated differently by listing the

---

[10] The AC is littered with terms like "targeted," "harassed," and "threatened," but these conclusory terms fail to identify any actionable conduct with the requisite specificity. *See Yusuf*, 35 F.3d at 713 ("[T]o survive a motion to dismiss, the plaintiff *must specifically allege the events* claimed to constitute intentional discrimination") (emphasis added)..

same exact claims for both minority and non-minority student plaintiffs"); *see, e.g.*, *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) (dismissing Title VI claim alleging school's "imposition of a disciplinary penalty . . . was on the basis of [] race and national origin, Hispanic" as too "conclusory" without "additional facts suggesting this was done to purposely discriminate"); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("naked allegation that appellees 'selectively enforc[ed] the College rules . . . against plaintiffs…because they are black [or] Latin' is too conclusory to survive a motion to dismiss").

Second, Plaintiffs' conclusory allegation that unidentified "Campus Security" and members of SLC "administration" made "racist and/or violent comments about students," AC, ¶¶ 173, 179, 184-86, 193, 220, does not suffice to infer animus because Plaintiffs do not describe the alleged comments, or attribute them to any individual *who was involved in the disciplinary action*. The absence of this causal link is fatal. *See Minto*, 2019 U.S. Dist. LEXIS 165670, *23 ("fact-specific allegations of a causal link between the defendant's actions and plaintiff's race are required") (quotation omitted); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 109 (2d Cir. 2022) ("notwithstanding its reference to two persons who commented on [plaintiff's] ethnicity…the Complaint did not plausibly allege that [the decisionmaker] was influenced by those statements or that the ethnic views of [those individuals] played a meaningful role in [the decisionmaker's] decision" to discipline plaintiff).[11]

---

[11] Since the AC does not identify the allegedly "racist" comment, it fails to state a claim, and in any event, even overly racially motivated comments that are fleeting do not give rise to a claim. *Aoutif v. City Univ. of N.Y.*, 2005 U.S. Dist. LEXIS 31827, *12 (E.D.N.Y. Dec. 8, 2005) (dismissing complaint for lack of discriminatory animus despite allegation that plaintiff's Department Chair stated, "you're Arab," administrative assistants stated, "Oh My God, Arab" and "Bin Laden is here").

Third, Plaintiffs' effort to allege disparate treatment also fails due to the absence of any legitimate comparator group. In order to plausibly allege disparate treatment discrimination, a plaintiff must demonstrate "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" such that "the comparator . . . [is] similarly situated to the plaintiff in all material respects." *Idlibi v. Conn. Dep't of Pub. Health*, 2024 U.S. App. LEXIS 27746, *6 (2d Cir. Nov. 1, 2024) (summary order) (cleaned up), *quoting Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022). Although the AC attempts to identify purported comparators, i.e., "people who support Israeli aggression," and so-called "Zionist students," AC, ¶¶ 121, 133, 151, 222, these allegations do not identify an appropriate comparator group because Plaintiffs do not allege that the College chose not to discipline these "other" students following comparable conduct, i.e., unlawfully occupying a campus building. Indeed, there is no allegation that these "other" students engaged in *any* particular conduct, much less conduct akin to what these Plaintiffs were disciplined for. Plaintiffs thus fail to allege disparate treatment. *See, e.g.*, *Badr v. N.Y. Inst. of Tech.*, 2025 U.S. Dist. LEXIS 256055, *14 (E.D.N.Y. Dec. 10, 2025) (dismissing Title VI claim based on "alleged pattern of disproportionately harsh disciplinary measures against Muslim and Middle Eastern students . . . compared to non-Muslim students"), *report and recommendation adopted* 2026 U.S. Dist. LEXIS 70249 (E.D.N.Y. Mar. 31, 2026) (rejecting "conclusory allegations that non-Muslim students received lesser disciplinary sanctions for allegedly comparable misconduct."); *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 21 (2d Cir. 2020) (plaintiff did not plead facts that gave plausible support to a minimal inference of discriminatory motivation by referencing three white males he claimed were "disciplined differently" after being accused of crimes because none of the comparators had sought readmission after being expelled and thus did not "closely resemble[e]" plaintiff's "facts and circumstances").

For the foregoing reasons, Plaintiffs fail plausibly to allege any claim of intentional discrimination by the College, whether based on alleged circumstantial evidence or disparate treatment allegations.

### 2. The College was not deliberately indifferent to severe, pervasive, and objectively offensive harassment of these Plaintiffs.

Generally, the "actions of other students and [employees] will [] not be imputed to the [school]" under Title VI. *Rodriguez v. N.Y. Univ.*, 2006 U.S. Dist. LEXIS 97732, *19-20 (S.D.N.Y. Nov. 17, 2006). The narrow exception to this rule is a deliberate indifference claim. "In order to plead a deliberate indifference claim under Title VI, the plaintiff must allege facts demonstrating that the school (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *HB*, 2012 U.S. Dist. LEXIS 141252, *43 (quotation omitted).[12] Several well-established principles prevent Plaintiffs from plausibly alleging deliberate indifference here.

First, "not all harassment is actionable." *Zeno*, 702 F.3d at 665. To be actionable, harassment must be "so severe, pervasive and objectively offensive that it effectively denied [plaintiffs] educational benefits[.]" *HB*, 2012 U.S. Dist. LEXIS 141252, *45. A "sole instance of race-related conduct cannot support a deliberate indifference claim." *Id.*; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (a "mere offensive utterance" is not sufficient, the "challenged incidents" must be "more than episodic; they must be sufficiently continuous and concerted") (quotation omitted).

---

[12] Whether Plaintiffs' Title VI claim is labeled as one for "deliberate indifference" or "hostile environment," the standard is the same. *Daly v. Miller Place Union Free Sch. Dist.*, 2025 U.S. Dist. LEXIS 252863, *25-26 (E.D.N.Y. Dec. 3, 2025).

Second, a school "must know of the harassment" to be liable. *Zeno*, 702 F.3d at 666. "Constructive knowledge is not enough; only actual knowledge is a predicate to liability." *Id.*; *see also Nisa Muhammad v. Trs. of Columbia Univ.*, 2025 U.S. Dist. LEXIS 193988, *9 (S.D.N.Y. Sept. 30, 2025) (dismissing Title VI claim because "plaintiff provide[d] no factual allegations about when and how Columbia became aware of any alleged severe harassment"); *Khen*, 2025 U.S. Dist. LEXIS 10575, *10-11 (same).

Third, a school is "subject to liability for third-party conduct only if it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" *Zeno*, 702 F.3d at 665, *quoting Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 644-45 (1999). A school exercises substantial control over the circumstances of the harassment when it occurs "during school hours and on school grounds" and is perpetrated by a <u>student</u>, *see Zeno*, 702 F.3d at 665 ("a school district's authority to take remedial action lies in its longstanding disciplinary oversight over its students"), or <u>employee</u>, *see Khen*, 2025 U.S. Dist. LEXIS 10575, *10 ("federal courts permit deliberate indifference Title VI claims against funding recipients for the acts of third parties, including their employees").

Fourth, "[a] finding of deliberate indifference depends on the adequacy of a school['s] response to the harassment." *Zeno*, 702 F.3d at 666. The school's action, or inaction, must, "at a minimum, cause students to undergo harassment or make them liable to or vulnerable to it." *Davis*, 526 U.S. at 645 (quotation omitted). A school's actions are only deliberately indifferent if they were "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Pleading deliberate indifference requires facts explaining how the institution responded upon receiving notice. *See, e.g.*, *Nisa Muhammad*, 2025 U.S. Dist. LEXIS 193988, *9 (dismissing Title IX claim because plaintiff "provide[d] no factual allegations about . . . how Columbia reacted").

25

Based on the above framework, no Plaintiff comes close to plausibly pleading a claim for deliberate indifference.

**Carlisle, Mbugua, and Tucker-Kellogg**. Plaintiffs Carlisle, Mbugua, and Tucker-Kellogg do not attempt to plead even the most basic elements of a deliberate indifference claim. They do not identify any harassment perpetrated against them—much less severe, pervasive, and objectively offensive harassment—to which the College was deliberately indifferent. They plead no claim.

**Abdulhaqq**. Plaintiff Abdulhaqq alleges "a student labeled her a member of 'Hamas' for wearing a Jordanian shemagh." AC, ¶ 162. Under the above authority, this one-time offensive act is not severe and pervasive, nor does Abdulhaqq allege that she ever notified the College or that the College otherwise had notice.

**Aickin**. Plaintiff Aickin alleges she was "threatened with violence and called a terrorist for wearing a keffiyeh and attending educational events related to Palestinian history." AC, ¶ 165. Aickin alleges no severe and pervasive harassment, no report to the College, and no indication that the College had control over the alleged perpetrator(s).

**Atalla**. Plaintiff Atalla allegedly has been "continually subject to racist rhetoric and actions from College administrators and Campus Security," AC, ¶ 169, but she fails to identify the alleged perpetrators except in conclusory terms, fails to describe the alleged "rhetoric and actions," and does not plausibly allege they were severe, pervasive, and objectively offensive. Nor does she claim to have reported those actions to the College.

**Cheema**. Plaintiff Cheema allegedly was "subject to the use of racist rhetoric and messaging used by the administration," AC, ¶ 173, but this conclusory assertion is insufficient to

26

identify severe and pervasive conduct, and Cheema does not describe the alleged "rhetoric and messaging" or claim to have reported it.

**Gullette**. Plaintiff Gullette is alleged to have received "repeated death threats and harassment on social media" and has been "doxed," AC, ¶ 183, but she does not allege that she ever reported these events to the College or that the perpetrators were within the College's control.

**Montague**. Plaintiff Montague claims that, in the summer of 2024, he "submitted a bias incident report" because "two Campus Security officers who followed him to his off-campus residence . . . as a result of his race, religion, and/or affiliation with a campus pro-Palestine organization." AC, ¶ 190. Unlike all of the other Plaintiffs, Montague *does* allege that he reported the alleged harassment to the College, so at least he pleads notice. Nonetheless, Montague's claim fails because: (1) there are no facts from which the Court may infer that the officers "followed" him because of his race, color, or national origin; (2) a one-time instance of being "followed" by officers does not constitute severe, pervasive, and objectively offensive conduct; (3) Montague does not allege what happened after he made the report to the College, and thus fails to allege deliberate indifference. *Nisa Muhammad*, 2025 U.S. Dist. LEXIS 193988, *9 (dismissing Title IX claim because plaintiff "provide[d] no factual allegations about . . . how Columbia reacted"). All of the elements of deliberate indifference, except perhaps notice, are missing.

**Richardson**. Plaintiff Richardson allegedly "has faced harassment and baseless accusations of antisemitism from peers on multiple occasions[.]" AC, ¶ 193. This conclusory assertion does not identify severe, pervasive, and objectively offensive conduct. Richardson does not identify these so-called "peers," or say whether they were within the College's control, or allege that the College knew about this alleged harassment.

**Gardinier**. Although Professor Gardiner has no Title VI claim because she is an employee, *see supra* Point II.B, her allegations fail to state a claim even if Title VI were available to her. Professor Gardinier alleges she has been called a "known antisemite" by a fellow faculty member, with whom she has engaged in a very public back and force about their competing ideologies. AC, ¶ 178. Here again, no severe, pervasive, and objectively offensive conduct has been alleged.

For these reasons, each Plaintiff fails plausibly to allege a Title VI deliberate indifference claim.

### 3. Plaintiffs' boilerplate reference to "retaliation" also fails to state a claim.

In Count II, Plaintiffs allege the "College also retaliated against the[m] for opposing its unlawful, discriminatory practices and policies." AC, ¶ 223. This is a boilerplate allegation that need not—and should not—be accepted under the Rule 12 standard. Plaintiffs have not pleaded facts showing they "engaged in protected activity, [the College] knew about [the] protected activity, [they] suffered an adverse action, and there was a causal connection between the protected activity and the adverse action." *Badr*, 2025 U.S. Dist. LEXIS 256055, *16 (quotation omitted).

Only two Plaintiffs—Gardinier[13] and Montague—even *arguably* allege they engaged in protected activity, which requires "complaining about intentional discrimination" based on a protected characteristic. *Bloomberg v. N.Y.C. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 37605, *11 (S.D.N.Y. Mar. 3, 2025); AC, ¶¶ 178, 190. But their claims nonetheless fail because they do not plausibly allege they suffered adverse action *because of that protected activity.* In fact, Montague expressly alleges that the adverse action, i.e., the conduct charges, arose due to his "involvement"

---

[13] Gardinier's alleged report is irrelevant anyway because Title VI is not available to her. *See supra* Point II.B.

in the Westlands occupation, AC, ¶ 189, *not* as retaliation for the Title VI report that he claims to have made regarding an entirely separate event. For these reasons, any Title VI retaliation theory must be dismissed. *See, e.g.*, *Badr*, 2025 U.S. Dist. LEXIS 256055, *16-17.

### III.    PLAINTIFFS' HUMAN RIGHTS LAW CLAIM ALSO FAILS

The New York State Human Rights Law ("NYSHRL") prohibits discrimination on the basis of race, color, religion, and national origin, among other protected characteristics. N.Y. Exec. L. §§ 296(1), (4). Like Title VI, the NYSHRL does not protect viewpoint. *Wetzel v. Town of Orangetown*, 2015 U.S. Dist. LEXIS 21355, *22 (S.D.N.Y. Feb. 9, 2015) (NYSHRL "does not contemplate a cause of action based on political affiliation discrimination"), *citing* Exec. L. § 296(1)(a), (e); *Lax v. City Univ. of N.Y.*, 2024 N.Y. Misc. LEXIS 2987, *12 (Sup. Ct. Kings Co. June 28, 2024) ("Having an anti-Israel political agenda is not a protected group under the NYSHRL or the NYCHRL nor is viewpoint discrimination a recognized basis for a discrimination claim under the NYSHRL or the NYCHRL"). As with Title VI, the NYSHRL claim merely repackages a First Amendment viewpoint discrimination claim and must therefore be dismissed.

To the extent Plaintiffs allege the College violated Human Rights Law Section 296(4) by "fail[ing] to provide an education free of discrimination" on the basis of their "Islamic religion," "Palestinian nationality," and "support of other[] Palestinian and Muslim students" (AC, ¶¶ 230-32), that claim duplicates their Title VI claims in all material respects and should be dismissed for the reasons discussed in Point II. *Infant v. Massapequa Union Free Sch. Dist. (In re Parent)*, 2026 U.S. Dist. LEXIS 1844, *12 (E.D.N.Y. Jan. 5, 2026) ("Discrimination in education claims brought pursuant to both [Title VI and the NYSHRL] have the same pleading standards.").

29

IV.    **PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW BECAUSE THE COLLEGE'S ALLEGED "PROMISES" ARE NOT ACTIONABLE**

When a student enrolls at a college, an implied contract arises: "if the student complies with the terms prescribed by the [college], she will obtain the degree she seeks." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). Thus, "[i]n certain situations, a student may sue his college for a breach of an implied contract." *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405 (W.D.N.Y. 2017). "The terms of the implied contract are contained in the university's bulletins, circulars and regulations[,]" i.e., in the student handbook and similar documents. *Evans v. Columbia Univ.*, 2015 U.S. Dist. LEXIS 48768, *10 (S.D.N.Y. Apr. 13, 2015). But "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally*, 22 F. Supp. 3d at 206.

"[A] plaintiff must identify specific and discrete promises that were allegedly broken to state a breach of contract claim." *Bailey*, 2021 U.S. App. LEXIS 34926, *12; *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (same). The "mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim upon which relief can be granted[.]" *Gally*, 22 F. Supp. 2d at 207; *Ward v. N.Y. Univ.*, 2000 U.S. Dist. LEXIS 14067, *15 (S.D.N.Y. Sept. 25, 2000).

Likewise, "[n]ot all terms in a student handbook are enforceable contractual obligations." *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012) (quotation omitted). A claim will not arise from the breach of "general policy statements, rules, or guidelines about fair and equal treatment" because such provisions are too general to be enforced by the courts. *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 703 (W.D.N.Y. 2021); *Knelman*, 898 F. Supp. 2d at 709 ("Language in a college handbook or other official statement that is merely aspirational in nature,

30

or that articulates a general statement of a school's 'ideals,' 'goals,' or 'mission,' is not enforceable.") (quotation omitted). General policy statements are not actionable or enforceable by courts because they are "subject to neither quantification nor objective evaluation." *Gally*, 22 F. Supp. 2d at 207.

These well-established principles are fatal to Plaintiffs' contract claim. According to Plaintiffs, the following "promises" form the basis for their claim:

- "[F]ree speech, academic freedom, and privacy" (AC, ¶¶ 17, 241);

- "[D]ue process, equal protection," and "confidentiality" (*id.*, ¶ 240);

- The College will "foster honest inquiry, free speech, and open discourse," "embrace our diversity," and "endeavor to inflict no harm" (*id.*, ¶ 17).

Plaintiffs allege the College breached these promises by "making its campus an intolerable environment for the Plaintiffs," AC, ¶¶ 157, 159, "refusing to publicly address the harm . . . caused by anti-Palestinian bullying[,] departing from . . . customs around political protest [to implement] unjust disciplinary procedures[, and] using [the] commitment to 'mutual respect' as a way to stifle criticism" (*id.*, ¶ 244).

Plaintiffs' claim fails as a matter of law because the so-called promises of "academic freedom," "equal protection," "open discourse," "due process," are precisely the types of claims that courts routinely dismiss because they are deemed general statements of policy rather than concrete promises. *See, e.g.*, *Doe v. Syracuse Univ.*, 2024 U.S. Dist. LEXIS 137790, *16 (N.D.N.Y. Aug. 2, 2024) ("general promises to adhere to state or federal law are not sufficiently specific to form the basis for a breach of contract claim"); *Nungesser*, 169 F. Supp. 3d at 370 (quotation omitted) (same); *Ward*, 2000 U.S. Dist. LEXIS 14067, *10-12 (promises to "to respect" students were "broad pronouncements of the [u]niversity's compliance with existing anti-

31

discrimination laws" and could not "form the basis for a breach of contract claim"); *Gally*, 22 F. Supp. 2d at 208 (same).[14]

Further, Plaintiffs' invocation of so-called "Tedeschi rights" reflects a serious misapplication of the law and undermines their claim. The phrase "*Tedeschi* rights" is a misnomer. In its seminal decision, *Tedeschi v. Wagner Coll.*, the New York Court of Appeals did not establish any substantive "rights." The Court merely established the principle that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be *substantially observed*." 49 N.Y.2d 652, 660 (1980). *Tedeschi* does not eliminate the need for Plaintiffs to identify a *specific and concrete* right established through a written policy.

Ironically, Plaintiffs' invocation of *Tedeschi* reinforces the need for dismissal. Plaintiffs' breach of contract claim is one for money damages, *see* AC, ¶ 245, but *Tedeschi* does not permit recovery of money damages for a college's alleged breach of its policies, and in fact, the Court in *Tedeschi* dismissed the money damages claim. 49 N.Y.2d at 661-62 ("[s]o much of the complaint as sought money damages . . . was properly dismissed"); *see also Mason v Cent. Suffolk Hosp.*, 3 N.Y.3d 343, 349 (2004) ("*Tedeschi* actually supports the rejection of [plaintiff's] damages claim" because the *Tedeschi* Court "held that '[s]o much of the complaint as sought money damages . . .

---

[14] To the extent Plaintiffs' allegation at paragraph 239 of their Amended Complaint is construed as a separate claim for breach of the covenant of good faith and fair dealing, that claim must be dismissed as duplicative of plaintiffs' breach of contract claim. *See* AC, ¶¶ 17, 152; *compare* AC, ¶ 159, *with id.*, ¶ 161; *see also Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.") (quotations omitted).

was properly dismissed'"), *quoting Tedeschi*, 49 NY2d at 661-62). Thus, Plaintiffs' so-called

"*Tedeschi* claim" fails as a matter of law, under the express holding of *Tedeschi* itself.

### CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed entirely and with

prejudice as against Sarah Lawrence College.

Dated:  April 20, 2026                                **HODGSON RUSS LLP**

*Attorneys for Sarah Lawrence College*


By:     s/Joshua M. Agins
            Joshua M. Agins
            Molly F. Plewinski*
        1800 Bausch & Lomb Place
        Rochester, New York 14604
        (585) 454-0700
        jagins@hodgsonruss.com
        mplewinski@hodgsonruss.com

        *SDNY Admission Pending

33

**<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that the foregoing document contains 9,935 words, not including the cover page, tables of contents and authorities, or signature block, in compliance with the Court's April 13, 2026 Order granting the College leave to file its Motion with up to 10,000 words.

Dated: April 20, 2026                                          s/Joshua M. Agins
                                                                        Joshua M. Agins